Staley W. MIMS et al., Appellants,

v.

Wilford J. BOHN, Appellee.

No. 18761.

Court of Civil Appeals of Texas,
Dallas.

March 11, 1976.

Rehearing Denied April 8, 1976.

John C. Biggers, Rick W. Hightower, Biggers, Lloyd, Biggers, Beasley & Amerine, Dallas, for appellants.

Gerald R. Coplin, Passman, Jones, Andrews, Coplin, Holley & Co., Dallas, for appellee.

AKIN, Justice.

This is an appeal from an order overruling defendants' pleas of privilege. Plaintiff seeks to sustain venue in Dallas County under Tex.Rev.Civ.Stat.Ann. art. 1995(4) (Vernon 1964).

The principal question is whether plaintiff introduced sufficient evidence to support a finding of a civil conspiracy to deprive plaintiff of certain stock and cash dividends against defendants Southland Life insurance Company and Southland Financial Corporation, the Dallas County residents.

Wilford J. Bohn sued his former wife Carolyn Mims Bohn, her parents, Staley W. Mims and Oralie Mims, and the two Southland companies for damages in Dallas County alleging that the defendants conspired to wrongfully deprive him of his Southland Financial Corporation stock and the accrued cash dividends on this stock. In the same suit, plaintiff sued his ex-wife, as principal, and Travelers Indemnity Company, as surety, on a bond naming plaintiff as payee for damages resulting from the alleged wrongful issuance of an injunction enjoining defendants Southland Financial Corporation and Southland Life Insurance Company from delivering to plaintiff the stock and accrued dividends held by defendants Southland. The injunction was obtained ancillary to an action for a bill of review seeking to set aside the final judgment awarding the stock to plaintiff. This action was also alleged to be in furtherance of the conspiracy to deprive plaintiff of the use of his Southland stock. The defendants Mrs. Bohn and Mr. and Mrs. Mims each filed a plea of privilege to be sued in Houston County. These pleas were controverted by plaintiff who alleged that they were co-conspirators and, therefore, proper parties. After hearing, the trial court entered its order overruling the pleas of privilege and sustaining venue in Dallas County. Defendants Mr. and Mrs. Mims and Mrs. Bohn appeal. We affirm.

Article 1995(4) provides: "If two or more defendants reside in different counties, suit may be brought in *any county where one of the defendants resides.*" [Emphasis added.] In addition to proving that one defendant is a resident in the county of suit, Texas courts have engrafted two additional requirements, which are: (1) Plaintiff must allege a joint cause of action against the resident and nonresident defendants or a cause of action so intimately connected with the action proved against the resident defendant that joinder is proper to avoid multiplicity of suits; and (2) plaintiff must introduce evidence at the venue hearing to establish a cause of action

against the resident defendant. *Stockyards National Bank v. Maples,* 127 Tex. 633, 95 S.W.2d 1300 (1936); *Houston Sash & Door Co. v. Davidson,* 509 S.W.2d 690, 692–93 (Tex.Civ.App.—Beaumont 1974, writ ref'd n. r. e.). Since it was stipulated that Southland Life Insurance Company, Southland Financial Corporation, and Travelers Indemnity Company are Dallas County residents and since defendants Mrs. Bohn and the Mims are proper parties[1] to the alleged civil conspiracy against plaintiff, the only question for determination is whether plaintiff proved by a preponderance of the evidence a cause of action for civil conspiracy against the resident defendants Southland. Since Southland Life insurance is a wholly-owned subsidiary of Southland Financial Corporation, we consider them as one entity for the purpose of this appeal and will refer to them collectively as "Southland." Consequently, to prove a conspiracy for venue purposes under subdivision (4), plaintiff must also prove that at least one of the appellants conspired with Southland.

■ A civil conspiracy is "a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Great National Life Insurance Co. v. Chapa,* 377 S.W.2d 632, 635 (Tex.1964). All conspirators are jointly and severally liable for wrongful acts done in furtherance of the conspiracy. *State v. Standard Oil Co.,* 130 Tex. 313, 107 S.W.2d 550, 559 (1937). This is true even though one of the conspirators enters into the conspiracy at a later time. *Id.* at 560. In *International Bankers Life Insurance Co. v. Holloway,* 368 S.W.2d 567, 581 (Tex.1963), the Supreme Court quotes from *Jernigan v. Wainer,* 12 Tex. 189, 193 (1854):

> When men enter into conspiracies, they are not likely to call in a witness . . In such cases the injured party must necessarily have recourse to circumstantial evidence. For it is only *by the inferences and deductions which men properly and naturally draw from the acts of others in such cases, that their intentions can be ascertained.* They are not likely to proclaim them in the hearing of witnesses. [Emphasis added.]

The *Holloway* court also quotes *Whitmore v. Allen,* 33 Tex. 355, 357 (1870): "A conspiracy may be proven as well by the *acts* of the conspirators, as by anything they may say, touching what they intended to do." [Emphasis added.] A conspiracy may be established, therefore, by proof which shows a concert of action or other facts and circumstances from which the natural inference arises that the wrongful, overt acts were committed in furtherance of a common design, intention, or purpose of the conspirators. *Texas Public Utilities Corp. v. Edwards,* 99 S.W.2d 420 (Tex.Civ.App.— Austin 1936, writ dism'd).

■ Since appellants attack the order of the trial court on no evidence and insufficient evidence points, we review the evidence indulging every reasonable inference in favor of the trial court's order. *E. g., James v. Drye,* 159 Tex. 321, 320 S.W.2d 319, 323 (1959).

■ Prior to his marriage to defendant Carolyn Bohn, plaintiff owned no Southland stock. All Southland stock, except 86 shares given to plaintiff by defendants Mr. and Mrs. Mims, were gifts to Carolyn Bohn by her grandmother and by her parents, Mr. and Mrs. Mims. Carolyn Mims Bohn gave the stock to him before he filed for divorce on July 5, 1966.

In October 1966, while the divorce suit was pending, defendant Mr. Mims, in the presence of defendants Mrs. Mims and Mrs. Bohn, told plaintiff that he would never receive one penny of the money represented by the Southland stock and that "they" would do whatever was necessary to pre-

---

1. A nonresident defendant is a proper party under subdivision 4 if there exist common questions of fact. *Von Scheele v. Kugler-Morris General Contractors, Inc.,* 532 S.W.2d 375 (Tex.Civ.App.—Dallas, 1975); *Angelo v. Chemical Bank and Trust Co.,* 529 S.W.2d 783, 787 (Tex.Civ.App.—Dallas 1975, writ dism'd). Here the nonresident defendants are proper parties because the very essence of civil conspiracy is concerted action by multiple parties, all of whom are jointly and severally liable. Consequently, joinder is proper.

vent plaintiff from obtaining the stock. In addition, Mr. Mims engaged during the protracted divorce litigation in placing as much financial pressure on plaintiff as possible. For example, on October 20, 1972, Mims advised plaintiff that he had purchased plaintiff's note in the amount of $11,340 payable to the Franklin Bank of Houston, Texas, and demanded payment in full of the note. This note had been executed by plaintiff to secure funds to continue making payments on real estate owned by the parties to the divorce action. Furthermore, Mims attempted to foreclose on 216 acres of land in Houston County and posted the property for sale. Plaintiff was compelled to pay $696 to Mims to prevent foreclosure. Moreover, plaintiff had attempted to sell this 216 acres but was unable to do so because of threats made by defendants Mims and Bohn.

The litigation between plaintiff and his former wife included three jury trials,[2] in all of which defendant Staley Mims appeared as a witness for his daughter regarding ownership of the Southland stock. In December 1967, after the first judgment awarding the stock to plaintiff, Mrs. Bohn's attorney notified Southland that Mrs. Bohn was claiming title to all Southland Life Insurance Company stock standing in the name of Wilford J. Bohn except a few shares given Mr. Bohn by Staley W. Mims and wife Oralie B. Mims.

Prior to this notification plaintiff had been receiving periodic cash dividends. In February 1968, plaintiff made demand by letter upon defendant Southland for payment of certain withheld dividends and 575 shares of Southland Life stock, representing stock dividends on the stock standing in plaintiff's name. Southland refused to issue these stock dividends to plaintiff. After receiving this letter, Southland notified plaintiff in January 1968 that it would not deliver cash and stock dividends that accrued in January 1968.

On January 3, 1972, a second letter was written by defendants'[3] attorney calling Southland's attention to the fact that in the corporate reorganization Southland Life Insurance stock would be exchanged for stock in Southland Financial Corporation and that holders of Southland Life Insurance stock were to surrender their Southland Life Insurance Company stock for two shares of Southland Financial Corporation for each share of Southland Life surrendered. Again defendants' attorney made claim for Mrs. Bohn to the stock standing in the name of plaintiff "except a few shares given Mr. Bohn by Staley W. Mims and wife, Oralie B. Mims." This letter also states: "You are given this notice in order that Mrs. Bohn's rights may be protected, and so that you may take the steps necessary to protect yourselves."

By letter of January 7, 1972, plaintiff delivered all of his shares of the Southland Life Insurance Company to be exchanged in accordance with the reorganization agreement. Plaintiff instructed Southland to deliver his new certificates to him personally or by certified mail and again made demand that the certificate representing 575 shares previously withheld by Southland Life Insurance Company be delivered to him. In this letter he advised defendant Southland that refusal to deliver the certificate "may well be and probably is conversion and would subject Southland Life Insurance Co. to liability and damages, is without basis at law, and is over my strongest protests." He continued: "I have advised, moreover, that there is no lawful injunction prohibiting same or other lawful basis for refusing to deliver said certificate to me, and I again request that said certificate, or its exchange certificates be delivered to me without delay." On January 11, 1972, plaintiff met personally with the corporate attorney of

2. See Bohn v. Bohn, 420 S.W.2d 165 (Tex.Civ. App.—Houston [1st Dist.] 1967, writ dism'd); Bohn v. Bohn, 455 S.W.2d 401 (Tex.Civ.App.— Houston [1st Dist.] 1970, writ dism'd); Bohn v. Bohn, 498 S.W.2d 267 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ dism'd).

3. The attorney representing Mrs. Bohn in the divorce action also represented Mr. and Mrs. Mims on a plea of intervention in the divorce case asserting ownership of certain personal property.

Southland and reiterated these demands. Southland refused to comply. Southland did, however, give plaintiff a receipt dated January 11, 1972, acknowledging receipt of the certificates of Southland Life Insurance Company capital stock received by them for conversion into Southland Financial Corporation common stock with the following notation: "These certificates are being held in addition to the new Southland Financial Corporation certificate pending outcome of certain litigation contesting title to said certificates." On February 1, 1972, plaintiff received a letter from Southland transmitting a photocopy of a stock certificate showing 3,706 shares standing in the name of Wilford J. Bohn and reiterating that Southland was withholding delivery of all certificates "pending final resolution of ownership."

A *final resolution of ownership* was determined by a judgment rendered on December 20, 1972, which awarded the disputed shares to plaintiff as his separate property. No further appeal was taken. After this judgment became final, plaintiff by letter dated February 2, 1973, addressed to Southland's attorney, demanded payment of accrued cash dividends for the years 1968 through 1972 in the total amount of $12,966.25 together with interest thereon at the rate of six percent from the date accrued because of the "unlawful and wrongful retention" of these funds. In this letter plaintiff also detailed all of the certificates by number withheld from him by Southland and again made demand that the withheld Southland Financial Corporation certificates be issued immediately to him. Again, on February 3 or 4, 1973, plaintiff met personally with the corporate attorney for Southland and tendered a certified copy of the judgment of December 20, 1973, together with a certificate from the district clerk of Harris County showing that no appeal had been taken from this judgment. Plaintiff's demands for his stock certificates and accrued cash dividends were again refused by Southland. The reason given by Southland's attorney this time was because "Mrs. Bohn's attorney had filed a claim under the UCC."

On February 7, 1973, Southland's corporate attorney wrote a letter to Mrs. Bohn stating that Southland would have no alternative but to deliver the certificates and the accrued cash dividends to Mr. Bohn unless within thirty days from February 7, 1973, that Mrs. Bohn either obtain an injunction prohibiting Southland from delivering the stock and cash to Mr. Bohn or furnish Southland with an indemnity bond in the principal amount of not less than $250,000. This letter appears to have been written for the purpose of invoking Tex. Bus. & Comm.Code Ann. § 8.403(b) (Vernon 1968) which provides:

> The issuer *may* discharge any duty of inquiry by any reasonable means, including notifying an adverse claimant by registered or certified mail . . . and that the transfer will be registered unless within thirty days from the date of mailing the notification, either
>
> (1) an appropriate restraining order, injunction or other process issues from a court of competent jurisdiction; or
> (2) an indemnity bond sufficient in the issuer's judgment to protect the issuer and any transfer agent, registrar or other agent of the issuer involved, from any loss which it or they may suffer *by complying with the adverse claim* is filed with the issuer. [Emphasis added.]

This act by defendant Southland seems unusual because no duty of further inquiry existed after receipt of the final judgment. Indeed, the "inquiry" almost amounts to legal advice.

Nevertheless, plaintiff waited three days after the expiration of the thirty-day notice given Mrs. Bohn by Southland. Then on March 12, 1973, at 9:45 o'clock a. m., plaintiff and his attorney personally appeared at the office of Southland's attorney and again demanded delivery of the stock and accrued cash dividends. Southland's corporate attorney *immediately* refused to honor this demand. He gave no reason for his refusal. Plaintiff's attorney forthwith wrote a letter to Southland's corporate attorney to confirm both the time and fact of the demand

and the refusal of Southland to comply. We see no reasonable justification for this refusal. A reasonable inference may be drawn that Southland's corporate attorney knew that Mrs. Bohn's attorney was in the process of obtaining a temporary restraining order in Harris County pursuant to Southland's "suggestion" of February 7. Indeed, a temporary restraining order was signed by the domestic relations court of Harris County on March 12, 1973, restraining defendant Southland from either issuing the stock certificates or delivering the cash dividends to plaintiff. This temporary restraining order was ancillary to a suit for a bill of review to set aside the final judgment of December 12, 1972, and was conditioned, however, upon Mrs. Bohn's filing a good and sufficient bond in the sum of $200,000. This bond was not filed until March 14, 1973, at 2:30 o'clock p. m. The principal on this bond was Mrs. Bohn with defendant Travelers Indemnity Company as surety.

Certainly, this is evidence from which the trial court could draw a reasonable inference that Southland had entered into a civil conspiracy with defendants Mims and Bohn to deprive plaintiff of the use and benefit of the stock and the cash dividends accrued.

Thereafter, the trial court in Harris County entered a temporary injunction enjoining Southland from issuing the stock to plaintiff and enjoining plaintiff from disposing of the stock. The bond to protect Southland from liability was amended to also include plaintiff as a payee for damages in the event that the temporary injunction was determined to be wrongfully issued. Plaintiff appealed. *Bohn v. Bohn*, 498 S.W.2d 267 (Tex.Civ.App.—Houston [14 Dist.] 1973, writ dism'd). On July 18, 1973, the Court of Civil Appeals for the Fourteenth Supreme Judicial District reversed the order of the trial court granting the injunction and dissolved the injunction holding that Mrs. Bohn had not met the requirements for a bill of review and, consequently, was not entitled to the injunction. Although she filed a writ of error with the supreme court, which was finally denied on February 27, 1974, for want of jurisdiction, Mrs. Bohn took no action to stay the judgment of the court of civil appeals dissolving the injunction.

On October 23, 1973, plaintiff made written demand for his certificates, which as a result of another stock dividend in early 1973, amounted to 11,500 shares and for the accrued cash dividends being withheld by Southland which amounted to $15,841.25. In this demand plaintiff reiterated that the retention of the stock and funds by Southland was wrongful and was without legal justification, and he suggested that Southland was a willing party to the actions of defendants Mims and Mrs. Bohn to keep plaintiff from obtaining his lawful shares. In this letter plaintiff emphasized that certain of these shares were never disputed by Mrs. Bohn throughout the years of litigation. Yet again, Southland refused to comply although under no legal restraint. On March 3, 1974, after denial of a writ of error by the supreme court, plaintiff demanded that Southland deliver his stock and accrued cash dividends. Finally, on April 15, 1974, defendant Southland partially complied; however, Southland failed to deliver 200 shares together with $1,475 in accrued cash dividends on these shares, all of which were claimed by plaintiff. Southland sought to justify this action because it contended that the December 20, 1972, judgment was unclear as to ownership of these shares. Although plaintiff maintained that the judgment of December 20, 1972, is clear concerning ownership of these certificates, he nevertheless filed a motion for judgment nunc pro tunc in the domestic relations court of Harris County. On May 22, 1974, the domestic relations court of Harris County rendered its order denying the motion for judgment nunc pro tunc without hearing, finding the judgment clear and devoid of clerical error. The judgment clearly stated that all shares in the name of plaintiff, Wilford J. Bohn, on June 1, 1967, or on October 18, 1971, are his separate property together with all accrued cash dividends, stock dividends, whether issued or not except for 100 shares in the court's registry and 100 shares represented

by certificate number 61922, awarded to Mrs. Bohn. Included were all shares withheld including those never in dispute.

Thereafter, in response to an inquiry by plaintiff concerning the additional 200 shares of Southland Financial Corporation claimed by him together with the accrued cash dividends thereon, Southland advised plaintiff on January 17, 1975, that it had previously issued these shares together with the accumulated cash dividends to Carolyn Mims Bohn on August 26, 1974. No notice was given plaintiff under § 8.403(b) prior to issuance of the stock to defendant Mrs. Bohn such as Southland had given Mrs. Bohn in February 1973, when confronted with a certified judgment. Southland asserts as justification for this action the May 22, 1974, order denying motion for judgment nunc pro tunc. This order as noted, supra, simply found that a nunc pro tunc order was unnecessary. We see no reasonable justification for this action by Southland. Again, a reasonable inference may be drawn by the trial court that this action was evidence in furtherance of a conspiracy to deprive plaintiff of the use and benefit of his stock. Certainly, if defendant Southland had doubt as to the ownership of these shares it should have complied with § 8.403(b). Indeed, the action here of defendant Southland is not indicative of a mere innocent stakeholder. Southland gave Mrs. Bohn more than the fullest protection of the law on the one hand, and, on the other, completely disregarded the interests of plaintiff by advising him *after the fact* that they had issued the disputed stock to Mrs. Bohn. Under § 8.403 the issuer *may* discharge any duty of inquiry by any reasonable means; the reasonable means may be a suit for a declaratory judgment interpleading interested adverse parties and tendering the stock and accrued dividends into the registry of the court for determination of ownership. The "may" contained in § 8.403(b) is discretionary. But where an issuer exercises the option in favor of a party as it did after the judgment of December 20, 1972, was final in favor of Mrs. Bohn, and, fails to act under the same or even more compelling circum-

stances in the same matter to the other party, it is reasonable to infer that Southland was in truth and fact conspiring with defendants Mims and Mrs. Bohn to deprive plaintiff of his property. It is only from reasonable inferences and deductions that may be drawn from the acts and conduct of a person that his intentions may be ascertained. *Jernigan v. Wainer, supra*; *International Bankers Life Insurance Co. v. Holloway, supra.* These actions of defendant Southland are without legal justification or excuse and the natural consequence of these acts are oppressive of plaintiff's rights. An action for civil conspiracy lies if the acts of the conspirators are without legal justification or excuse and if the natural and necessary consequence of the act is the oppression of an individual. *Great National Life Insurance Co. v. Chapa, supra* at 635.

We conclude, therefore, that there was sufficient evidence of acts and conduct by Southland, the Mims and Bohn, for the trial court to conclude for the purpose of venue that they had entered into a conspiracy to deprive plaintiff of not only his stock and dividends but other property as well. Certainly, the evidence here is far more than a scintilla; consequently, we hold that plaintiff sustained his burden in proving a cause of action by a preponderance of the evidence of a civil conspiracy against the resident defendant Southland and the nonresident defendants Mims and Mrs. Bohn so as to sustain venue in Dallas County.

This holding, of course, is only for the purpose of determining venue of the action of plaintiff against the Mims and Mrs. Bohn. The Southland Companies were not involved in the venue hearing and are not parties to this appeal. Consequently, no adjudication of the conspiracy charge has been made against them either in the trial court or in this court.

Affirmed.

GUITTARD, J., dissents.

GUITTARD, Justice (dissenting).

I do not believe that the evidence in this record shows such a concert of action be-

tween the Southland Companies and the nonresident defendants as to justify the inference of a conspiracy. Consequently, I would reverse the trial court's order and sustain the pleas of privilege.