**CONTINENTAL NATIONAL BANK, Appellant,**

v.

**Bernard J. DOLENZ, Appellee.**

**No. 18350.**

Court of Civil Appeals of Texas, Fort Worth.

Feb. 26, 1981.

Rehearing Denied March 19, 1981 and March 26, 1981.

Shannon, Gracey, Ratliff & Miller and David E. Keltner, Fort Worth, for appellant.

Staples & Foster and Ross T. Foster, Hurst, for appellee.

## OPINION

HUGHES, Justice.

Continental National Bank of Fort Worth, Inc. has appealed a judgment rendered against it in favor of Bernard J. Dolenz for conversion of personal property consisting of motel furnishings and furniture. The judgment resulted from a jury trial.

We reverse and remand.

## HISTORY

The facts of the case appear to be that: In 1969, H–K–M Properties, Inc. was founded. Bernard Dolenz became a shareholder not long afterward. In the spring of 1970, H-K-M bought the realty comprising the Sands Motel, in Midland. Later H–K–M bought furnishings for the motel. September 8, 1970 H–K–M and each of its shareholders, as guarantors, executed a loan agreement with Bank, attached to which were: 1. Deed of trust on the realty; 2. Promissory note; 3. Security agreement on the personalty; 4. Two financing statements; 5. A guaranty agreement; and 6. A confirmation of lien form. All were executed by Dolenz.

Later H–K–M bought other personalty for the motel. In 1971, H–K–M deeded Dolenz the motel for his release of its debt to him, and for his assumption of liabilities to Bank. September, 1971 Dolenz leased motel to G & R Properties, Inc. H–K–M's note to Bank became past due. Bank demanded payment. Amount then due was $393,500.

There was a provision in the deed of trust for 10% attorney's fees in case of default. Bank paid ad valorem taxes of $36,501 supposed to have been paid by H–K–M under deed of trust. August 1, 1972 Bank held a foreclosure sale of Sands Motel realty. Bank's testimony was that Dolenz was highest bidder at sale but did not have the cash necessary to consummate the purchase on the strictly-cash terms. Dolenz' testimony was to the effect that Banks agents gave him to understand that the $393,500 would clear the debt, attorney's fees and all. On a second round of bidding, the Bank was the high bidder at $393,500.00.

Later, Dolenz notified the Bank that he owned the motel personalty. The Bank told Dolenz it had a deficiency in the foreclosure and it was going to foreclose its security interest in such personalty. The Bank did tell Dolenz it would, however, turn over the personalty to him if he could prove his ownership and instructed the motel lessee to continue paying rent payments to Dolenz until its investigation was completed. The Bank got no rent for personal property.

At a meeting of the Bank, Dolenz and G & R, the Bank stated it had insufficient proof of Dolenz's claim to personalty and

that it was going to sell, without warranty of title, whatever interest it had in such personal property. The Bank sent notice of such sale to Dolenz which he admitted receiving and, on October 10, 1972, the Bank sold G & R whatever interest it had in such property without warranty of title or encumbrances.

October 20, 1972 Dolenz sued G & R in Tarrant County for conversion. The case was moved to Midland County as a result of G & R's plea of privilege. On August 6, 1973 Dolenz added Bank as a defendant in the Midland suit. The Bank's plea of privilege resulted in its part of the case being transferred to Tarrant County. The trial in Midland proceeded, and resulted in a jury verdict that: 1. Dolenz did not purchase any of the personal property involved in the Sands operation for his own personal account; 2. Dolenz did authorize (the) inclusion of personal property owned by him or thereafter acquired by him individually be pledged or mortgaged to the Bank by means of the security agreement executed by H–K–M on connection with the $400,000 loan; 3. to the question as to whether they found the televisions and ice makers were owned by Bee Jay Corporation free and clear of any security interest of the Bank in October of 1972 the jury answered "no"; 4. the fair and reasonable rental value of the television sets and ice maker sets from August 1, 1972 until time of trial was $63,000 and that the reasonable rental value of the other personal property in the Sands was $70,000 for the same period; 5. the reasonable cash market value of the following items at the time of trial was: (1) The television sets at the Sands $7,800; (2) the three ice makers $650; and (3) the other personal property $58,000; 6. that the Bank's bid for the real estate of the Sands Motel at the foreclosure sale was intended by it to discharge and fully satisfy all indebtedness owed to it in connection with the Sands Motel. No judgment had been entered in Midland by June 5, 1979.

Dolenz testified in the Tarrant County trial that the purchase price of the personalty was $81,500, and that the value thereof was $300,000. One furniture expert testified the room furnishings to have a fair market value of $500 per room, with 130 rooms bringing the total to $65,000. The Tarrant County jury verdict was for a value of $111,500 on such personalty with a finding that the Bank had paid $36,501.36 in taxes on the Sands property. The Fort Worth jury also found that the Bank's security agreement covered all the personalty but it was estopped to assert it against Dolenz. The same jury found that the Bank converted the property of Dolenz or B.J. Corporation.

## HOLDING

Two bites or not two bites? That is the question. (Each party, in summation to this court, referred to the other's two bites at the apple.) Dolenz sued only G & R in Tarrant County when he first filed suit. G & R moved the apple to Midland by a successful plea of privilege. Dolenz then joined the Bank as a defendant in the suit at Midland. The Bank sliced off its portion of the apple and took it back to Tarrant County. The part of the apple left in Midland County turned out (on trial to a jury verdict) to have worms in it for Dolenz. Dolenz came to Tarrant County, took a bite out of the other segment of the apple and found it to his liking. The Tarrant County jury found that he did, too, own the personalty. It is apparent that if the Bank had not insisted on having its portion of the apple moved to Tarrant County, Dolenz would have had only one bite. It is also possible that the Midland jury, if it viewed the Tarrant section of the apple as more palatable, might have placed the bite where there were no worms and Dolenz would have been more than satisfied with that one bite. At any rate, the bank removed itself from the litigation in Midland County and, although the issues in both suits were essentially the same, the parties defendant were different in the two counties.

In view of the holding in *Hardy v. Fleming*, 553 S.W.2d 790 (Tex.Civ.App.—El Paso, 1977 writ ref. n.r.e.) wherein the trial court granted a summary judgment based on col-

lateral estoppel, we observed that the facts in this present case are essentially the same. In *Hardy* there was a holding that the finding in a previous workers compensation case involving its plaintiff, which finding was that such plaintiff had not had a heart attack, estopped such plaintiff from claiming the same alleged heart attack in *Hardy* (a medical malpractice case). We substitute the finding of "no personal account" in the Midland Dolenz case for the finding of "no heart attack" in the *Hardy* case and we have the same situation. Of course, *Hardy's* estoppel was based on a final judgment and amounted to a plea in bar.

 To this day, we are not cognizant of a judgment on the Midland section of "apple," and we realize that a plea in bar would not be good. However, the holding in *Hardy* that "mutuality" of parties in both law suits is no longer required for collateral estoppel brings us to the conclusion that the Tarrant County case should have been abated since Dolenz, in Tarrant County, was seeking to obtain a finding of conversion of the identical furniture which he, at the same time, was seeking in Midland County. We also note a wide discrepancy in the $66,450 personalty value found by the jury in Midland as opposed to the $111,500 value found by the Tarrant jury. We hold that the doctrine of collateral estoppel applies here and sustain the Third point of error, that trial court erred in overruling Bank's plea in abatement.

Having sustained the third point of error, we do not find it necessary to discuss the other points of error in detail, and having considered all of them, they are overruled.

We reverse and remand.