**Bernard J. DOLENZ, Petitioner,**

v.

**CONTINENTAL NATIONAL BANK OF FORT WORTH, Respondent.**

No. C–283.

Supreme Court of Texas.

July 22, 1981.

Rehearing Denied Sept. 28, 1981.

Staples & Foster, Ross T. Foster, Hurst, for petitioner.

Shannon, Gracey, Ratliff & Miller, David E. Keltner and D. Michael Wallach, Fort Worth, for respondent.

BARROW, Justice.

This is a suit for conversion. The principal question presented concerns the trial court's refusal to grant a plea in abatement.

Bernard J. Dolenz, a Fort Worth psychiatrist, and Bee Jay Corporation (Dolenz)[1] sued G&R Properties, Inc. (G&R), a foreign corporation, in Tarrant County for the alleged conversion of certain equipment in a motel located in Midland County. The trial court sustained G&R's plea of privilege and transferred the suit to Midland County. Dolenz then sued G&R and Continental National Bank of Fort Worth (CNB) in Midland County for the conversion of the equipment. Dolenz's suit against CNB was severed and transferred to Tarrant County when the Midland County court sustained CNB's plea of privilege.

Dolenz's suit against G&R went to trial in Midland County, and although the jury reached a verdict in that suit, no judgment has been rendered. When the cause was subsequently set for trial in Tarrant County, CNB filed a plea in abatement in Tarrant County, based on the pendency of the Midland County suit. The Tarrant County trial court denied CNB's plea in abatement. After a trial on the merits, the Tarrant County trial court rendered a judgment for Dolenz based on the jury verdict. The court of civil appeals concluded that the trial court should have granted CNB's plea in abatement. It therefore reversed the judgment of the trial court and remanded the cause to the trial court. 613 S.W.2d 73. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

This cause has a complex factual and procedural background. Late in the year 1969, H–K–M Properties, Inc. (H–K–M), became interested in purchasing certain properties in Midland, Texas. To enhance H–K–M's access to credit for financing the purchase of these properties, certain shareholders in H–K–M solicited Dolenz's involvement with their corporation. Dolenz became a shareholder in H–K–M in early 1970; shortly thereafter, H–K–M purchased the Sands Motel in Midland, Texas.

1. Bee Jay Corporation is operated by Dolenz. It assigned to him any and all sums of money due it from Continental National Bank of Fort Worth arising out of the cause of action now before the Court. We will therefore refer to Bee Jay and Dolenz collectively as "Dolenz."

Fort Worth National Bank provided the financing for that purchase, with security provided in part by some of Dolenz's investment portfolio. Subsequent to its purchase of the motel, H–K–M purchased equipment to operate the motel.

H–K–M soon needed additional funds for operating the motel; it also needed to refinance the debt it owed Fort Worth National Bank. In order to satisfy these needs, H–K–M, as borrower, and each of its shareholders, as guarantors, executed a loan agreement with CNB on September 8, 1970, by which CNB agreed to loan H–K–M up to $400,000. Attached to the loan agreement were a guaranty agreement, a security agreement concerning the motel equipment, a deed of trust on the motel realty, a promissory note, two financing statements and a confirmation of lien form. The guaranty agreement obligated each signing guarantor, including Dolenz, to guarantee full payment of any H–K–M indebtedness to CNB up to $400,000. The security agreement attached to the loan agreement evidenced H–K–M's grant to CNB of a security interest in all the equipment acquired by H–K–M for use in the motel. More equipment was purchased for the motel after the loan transaction.

Shortly after H–K–M arranged the loan from CNB, Dolenz demanded H–K–M repay the debt it owed him. In exchange for a release of this obligation and the assumption by Dolenz of its liability to CNB, H–K–M deeded the motel and its contents to Dolenz. Dolenz operated the motel for a few months and on September 26, 1971, he leased the motel to G&R Properties, Inc. (G&R).

A payment due on H–K–M's obligation to CNB was not made. CNB made demand for the balance due on the note, but the demand was not honored. On August 1, 1972, CNB conducted a public foreclosure sale of the motel realty under the terms of the deed of trust. Dolenz was initially the high bidder on the realty, but did not have the cash to comply with the terms under which the sale was held. When Dolenz could not comply with the cash require-

ment, CNB bid in the realty for $393,500. CNB continued to lease the motel to G&R.

Because the foreclosure sale left a deficiency in H–K–M's obligation under the loan agreement, CNB decided to foreclose its security interest in the motel equipment. CNB informed Dolenz of its intention to foreclose its security interest and conduct a private sale of the equipment. When Dolenz objected to the sale and claimed the equipment as his own, CNB informed him it would relinquish the equipment to him if he could prove his purported ownership. Dolenz failed to provide satisfactory proof of ownership to CNB and CNB thereafter sold the equipment to G&R Properties, without warranty of title or encumbrances. G&R began using the equipment as its own in the operation of the motel.

This disposition of the motel equipment caused Dolenz to initiate suit in Tarrant County against G&R for conversion of the equipment. The pleas of privilege heretofore mentioned were sustained. This resulted in Dolenz having one suit against G&R in Midland County and another suit against CNB in Tarrant County. Although both suits primarily involved the alleged conversion of Dolenz's equipment, Dolenz asserted several theories of recovery in each suit.

The Midland County suit was tried first. On May 25, 1978, the jury in that suit reached a verdict in which it found Dolenz had not purchased any of the equipment for his own personal account, and that he had authorized any motel equipment he then owned or thereafter acquired to be pledged to CNB by means of the Security Agreement executed by H–K–M. The jury found the fair market value of the allegedly converted equipment was $66,450, and also found CNB's bid at the foreclosure sale of the motel realty was intended by it to discharge and fully satisfy all indebtedness owed it in connection with the motel. Both Dolenz and G&R filed motions for judgment, but no judgment has yet been rendered.

After the Midland County suit was tried, Dolenz sought a setting in the Tarrant

County suit. In response, CNB filed the plea in abatement involved in this cause. CNB urged the Tarrant County court to abate Dolenz's suit against it because "the issues to be decided in this case . . . have been fully tried by Plaintiff . . . and . . . he should not now have a second opportunity to relitigate the identical issues in this court." After a hearing on June 22, 1979, the Tarrant County court denied CNB's plea in abatement. On October 29, 1979, Dolenz's suit against CNB proceeded to trial and resulted in a jury verdict favorable to Dolenz. The jury found CNB had converted motel equipment belonging to Dolenz with a fair market value of $111,500. The jury found Dolenz did not intend to subject his interest in the motel equipment to CNB's security interest, and that CNB was estopped to assert a claim under the note and deed of trust against Dolenz for a sum in excess of the $393,500 which CNB bid at the foreclosure sale. Based on the jury verdict, the Tarrant County court entered judgment in favor of Dolenz against CNB in the amount of $159,539.69.

The court of civil appeals reversed the Tarrant County court and remanded the cause to that court. In doing so, it held the trial court should have abated Dolenz's suit against CNB. The court of civil appeals overruled the rest of CNB's points of error. Both Dolenz and CNB have filed applications for writ of error challenging the judgment of the court of civil appeals.

■ We first consider the application filed by Dolenz. Dolenz challenges the court of civil appeals' holding that the trial court should have abated Dolenz's suit against CNB. When there exists a complete identity of parties and controversies between the prior and subsequent suits, it has been held that the trial judge in the subsequent suit has no right to take any other action except to sustain the plea in abatement. *Curtis v. Gibbs*, 511 S.W.2d 263 (Tex.1974). Unlike the situation in *Curtis*, however, the Tarrant County suit now before this Court lacks a complete identity of parties and issues with the prior Midland County suit. The proper rule governing the

disposition of pleas in abatement when there exists a lack of identity between the causes was stated in *Timon v. Dolan*, 244 S.W.2d 985 (Tex.Civ.App.—San Antonio 1951, no writ) as follows:

A court, *in exercise of its sound discretion*, may abate an action for reasons of comity, convenience and orderly procedure, and *in exercise of that discretion* may look to "the practical results to be obtained, dictated by a consideration of the inherent interrelation of the subject matter of the two suits." *North Texas Coach Co. v. Morton*, Tex.Civ.App., 92 S.W.2d 263, 266 (*Timon, supra*, at 987; emphasis supplied).

This Court must therefore determine whether the Tarrant County trial court abused its discretion in denying CNB's plea in abatement. It must be recognized at the outset that a separate suit for Dolenz's cause of action against CNB came into being as a result of CNB's plea of privilege. Furthermore, at the time the Tarrant County trial court overruled CNB's plea in abatement, the jury verdict obtained in Midland County had languished for more than a year without the rendition of a final judgment. Both parties filed motions for judgment and urged rendition of judgment in their favor. In any event, a judgment in the Midland County suit would not have foreclosed all issues between CNB and Dolenz. We hold that under this record the Tarrant County trial court did not act arbitrarily or unreasonably in denying CNB's plea in abatement. Therefore, the court of civil appeals erred in holding as a matter of law that the trial court erred in refusing to grant CNB's plea in abatement.

We now turn to a consideration of the points of error presented by CNB in its application for writ of error, wherein CNB urges it is entitled to rendition of a take-nothing judgment in its favor.

■ CNB first urges that the trial court erred in failing to grant its motion for judgment non obstante veredicto because Dolenz did not diligently prosecute his suit against CNB. The dismissal of a suit for failure to prosecute that suit with due dili-

gence is a matter which rests in the sound discretion of the trial court. *Bevil v. Johnson,* 157 Tex. 621, 307 S.W.2d 85 (1957); *Texas v. Beever Farms, Inc.,* 549 S.W.2d 223 (Tex.Civ.App.—San Antonio 1977, writ ref'd n. r. e.). We cannot say the record in this cause demonstrates a failure to diligently prosecute a suit as a matter of law. CNB recognizes that the suit was timely filed. Dolenz opted to try the Midland County suit first. The Tarrant County suit was tried a little over a year after a jury verdict was returned in the Midland County suit. The Tarrant County court had granted CNB two continuances. The trial court did not abuse its discretion in refusing to grant CNB's motion for judgment non obstante veredicto based on Dolenz's alleged failure to diligently prosecute his suit.

CNB further argues there is no evidence to support these essential jury findings: (1) that CNB converted Dolenz's property; (2) that the fair market value of the converted personalty was $111,500; and (3) that Dolenz was prejudiced by CNB's representation to him that a bid of $393,500 at the foreclosure sale of the motel realty would pay off his obligation to CNB.

■ In reviewing "no evidence" points, we must consider only the evidence and inferences from the evidence which support the jury findings and disregard all evidence and inferences to the contrary. *Elliott v. Great Nat. Life Ins. Co.,* 611 S.W.2d 620 (Tex.1981). After reviewing the record before us in this light, we find there is more than a scintilla of evidence to support each of these jury findings.

■ The jury finding that CNB converted the equipment is supported by the fact that CNB exercised dominion over that equipment by denying Dolenz access to it and by transferring the equipment to G&R

at the foreclosure sale. The jury finding concerning the fair market value of the equipment is supported by testimony from Dolenz that the value of the equipment was $111,500. Dolenz testified that one of CNB's officers informed him a bid of $393,500 would pay off the obligation to CNB. Dolenz also testified he attended the foreclosure sale to make sure no deficiencies would remain against him and that he remained in the bidding until CNB bid $393,500 for the personalty. This testimony supports the jury finding that Dolenz made a bid at the foreclosure sale, and that he was prejudiced by CNB's representation.

■ CNB also complains the trial court submitted an improper definition of the term "conversion" to the jury.[2] Specifically, CNB urges that an instruction on "qualified refusal" should have been included in the definition of "conversion." We hold the trial court definition fairly submitted the issue of "conversion" to the jury. *Waisath v. Lack's Stores, Inc.,* 474 S.W.2d 444 (Tex. 1971). We also hold the submission of a global issue on estoppel, which the jury was allowed to answer only if its previous answers to other special issues established the individual elements of estoppel, did not unduly emphasize the estoppel issue in the consideration of the jury.

CNB's points in its application for writ of error are overruled. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

2. The issue submitted to the jury, and the accompanying definition of "conversion," were as follows:

   *SPECIAL ISSUE NO. 1:*

   Do you find from a preponderance of the evidence that on or about October 10, 1972, the Continental National Bank, acting through its officers, agents and employees, converted, as that term is defined herein, the

personal property if any of Bernard J. Dolenz or Bee Jay Corporation located in the Sands Motel?

You are instructed that the term "Converted" means the exercise of dominion over the personal property of another without consent of the owner and to the exclusion of the owner's right of possession and use. Wrongful intent is not an element.