J. Mike SMITH, Relator,

v.

The Hon. Neil CALDWELL, Judge of the 23rd District Court of Brazoria County, Respondent.

No. 01–87–00433–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 22, 1987.

Rehearing Denied June 30, 1988.

Jon Mercer, Houston, for relator.

Steve Stewart, Patricia Beaujean, Jenkens, Gilchrist & Heath, Houston, for real parties in interest.

Neil Caldwell, Judge, 23rd District Court, Angleton, for respondent.

Before EVANS, C.J., and SAM BASS and DUGGAN, JJ.

## OPINION

EVANS, Chief Justice.

The relator, J. Mike Smith, seeks a writ of mandamus to compel the Honorable Neil Caldwell, Judge of the 23rd Judicial District Court of Brazoria County, to rescind an order denying Smith's plea in abatement and to dismiss a suit against Smith brought

by the Bank of Brazoria. The Federal Deposit Insurance Corporation, in its corporate capacity as liquidator of the bank's assets, has been substituted as the real party in interest.

Relator's petition for writ of mandamus alleges a conflict of jurisdiction between the suit brought by the bank in the District Court of Brazoria County and an action initiated earlier by the bank in the District Court of Harris County. In his petition for mandamus, relator asserts that the Bank of Brazoria initially sued Smith in Harris County to recover on a promissory note, and Smith filed a counterclaim. The counterclaim alleged fraud, conspiracy, and deceptive trade practices by the bank and its board chairman, Charles B. Moreno, and sought rescission of the note and damages. After the District Court of Harris County granted an interlocutory default judgment against Moreno, the bank nonsuited its action on the note and then filed a new action on the note against relator in Brazoria County. Relator responded with his plea in abatement, which was denied. Relator now seeks relief by way of writ of mandamus.

The Bank of Brazoria, in response to relator's petition, asserts that relator misstates the facts and mischaracterizes the nature of the parties' actions. The Bank of Brazoria also complains of the exhibits attached to the relator's petition, pointing out that the exhibits are not certified and that no transcript or statement of facts has been filed.

On the merits, the bank contends that the trial court did not abuse its discretion in denying relator's plea in abatement because there is no identity of issues between the two cases. The bank argues that relator's "supplemental" counterclaim, filed after the trial court sustained special exceptions to the original counterclaim, contained allegations of wrongful action only against Moreno, not the bank.

■ This Court has the power to issue a writ of mandamus to settle a conflict of jurisdiction if a second court refuses to sustain a proper plea in abatement. *See Curtis v. Gibbs*, 511 S.W.2d 263 (Tex.1974).

But mandamus is an extraordinary remedy that will be granted only upon a clear showing of an abuse of discretion. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985).

■ We first consider the exhibits filed in support of relator's petition for writ of mandamus. The bank contends that those exhibits not certified cannot be considered.

Accompanying relator's petition is a certified copy of the order denying the plea in abatement, and uncertified copies of various pleadings filed in the Harris and Brazoria County Courts, a Harris County docket sheet, and the interlocutory default judgment entered against Moreno. The relator's petition is verified by his attorney's affidavit, which states that all of the exhibits are true and correct copies of either (1) the original documents on file in Harris and Brazoria County Courts; (2) documents received by relator's attorney from the district clerk of Harris County; (3) documents that were served on the relator; or (4) documents prepared by relator's counsel. No statement of facts has been filed.

Under the Texas Rules of Appellate Procedure, a petition for mandamus must "be accompanied by a certified or sworn copy of the order complained of and other relevant exhibits." Tex.R.App.P. 121(a)(2)(C). In interpreting the "certified or sworn" requirement in Tex.R.Civ.P. 166–A(c) for papers filed in summary judgment proceedings, the Texas Supreme Court has held that copies of documents attached to a properly prepared affidavit are sworn copies within the meaning of Rule 166–A. *Republic National Leasing Corp. v. Schindler*, 717 S.W.2d 606 (Tex.1986); *see Stocking v. Biery*, 677 S.W.2d 792 (Tex.App.—San Antonio 1984, orig. proceeding) (exhibits to an original proceeding not certified and apparently not sworn were not considered). Additionally, whenever it may be necessary or proper for any party to a civil suit or proceeding to make an affidavit, it may be made by the party's attorney. Tex. R.Civ.P. 14.

Although the bank complains generally that the documents are not certified, it does

not challenge relator's sworn allegations that the exhibits are true and correct copies of the originals. Thus, we hold that exhibits properly verified by a party's attorney meet the requirements of being sworn copies under Tex.R.App.P. 121(a)(2)(C).

Upon review of this record, however, we conclude that the relator has not shown that the trial court abused its discretion in denying the relator's plea in abatement.

Relator's original counterclaim alleged that in 1981, Moreno invited the relator to join in an investment group that was purchasing stock in Liberty Bank, a Houston banking institution. Relator alleged that Moreno arranged the necessary financing, held the voting rights as trustee, and was to be responsible for operating Liberty Bank in the best interest of the stockholders. Based on Moreno's representations and assurances, relator purchased 25,000 shares of Liberty Bank stock financed by a $50,625 promissory note to Northshore Bank in Houston. Moreno then transferred the investment group's financing to BancTexas–Houston, where new notes were signed, and finally Moreno moved the financing arrangements to Bank of Brazoria, where Moreno was chairman of the board of directors. According to relator, Moreno controlled both the Bank of Brazoria and Liberty Bank. Allegedly due to Moreno's mismanagement, Liberty Bank was required to undergo a complete recapitalization, which relator asserts substantially diluted his stock ownership and caused the loss of his investment.

The Bank of Brazoria filed special exceptions to relator's original counterclaim, asserting among other things that relator had failed to allege a viable cause of action against it. The trial court sustained the bank's exceptions, and relator then filed a "supplemental" counterclaim. In it, he alleged, in effect, that Moreno had a fiduciary relationship with the relator and the other stock investors, and he violated that relationship by his representations regarding the value of the stock and by his mishandling of the collateral. Although the relator generally alleges in the supplemental counterclaim that Moreno and the Bank of Brazoria "were inextricably intertwined," he failed to allege any representations or actions made by anyone other than Moreno. All of his allegations related back to the initial acquisition of Liberty Bank stock. Thus, the allegations in the "live" counterclaim do nothing more than assert a broad conclusion that the Bank of Brazoria and Moreno are somehow "inextricably intertwined."

Relator contends that the facts underlying its counterclaim arise out of the same transaction as those upon which the principal suit by the Bank of Brazoria is based, and that the supplemental counterclaim is a compulsory counterclaim within the meaning of Tex.R.Civ.P. 97(a). Thus, the relator argues that there was a complete identity of parties and issues, so that the trial court was required, as a matter of law, to sustain the plea in abatement. *Curtis v. Gibbs*, 511 S.W.2d 263.

The Bank of Brazoria responds by pointing out that its suit on the note is founded in contract, while the relator's suit is in tort. It asserts that the relator's claim to affirmative relief is based on a theory distinct and independent from the issues raised in the suit on the note, and therefore is not a compulsory counterclaim. *See Astro Sign Co. v. Sullivan*, 518 S.W.2d 420 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.).

Unless there is a complete identity of parties and issues, it is within the trial court's discretion to overrule a plea in abatement for reasons of comity, convenience, and orderly procedure. *Dolenz v. Continental National Bank*, 620 S.W.2d 572, 575 (Tex.1981); *Wyatt v. Westergren*, 704 S.W.2d 148 (Tex.App.—Corpus Christi 1986, orig. proceeding). Thus, unless the record demonstrates that relator's claim for affirmative relief was a compulsory counterclaim, the trial court was not required, as a matter of law, to abate the second suit. *See Reliance Universal, Inc. v. Sparks Indus. Serv., Inc.*, 688 S.W.2d 890 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.). Based on the scant record before us, we are unable to ascertain which controversies continue to exist in the Harris

County District Court suit after the court granted the special exceptions to relator's counterclaim. The record thus does not show whether the required identity of issues exists here. It is also unclear whether the counterclaim is based entirely on a series of acts that occurred before the Bank of Brazoria became involved or had control of the note. Therefore, a complete identity of parties has not been shown either. Because the relator has not demonstrated that his counterclaim was compulsory, we cannot say that the trial court abused its discretion in denying the plea in abatement.

The petition for writ of mandamus is refused.

## ORDER

DUGGAN, Justice, dissenting.

I respectfully dissent from the order denying the motion for rehearing. I would grant the petition for writ of mandamus and direct the trial court to rescind its order denying relator's plea in abatement and to dismiss the later-filed Brazoria County suit between the same parties.

After the Harris County court sustained the Bank of Brazoria's special exceptions to the relator's counterclaim, I believe that the relator sufficiently amended his counterclaim to assert clearly, allegations of wrongdoing against both Marino and the Bank of Brazoria.

The final act of fraudulent conduct that relator alleged that Marino and the Bank of Brazoria committed against him occurred when Marino and the Bank of Brazoria allowed Marino's 2,050,000 shares of the investment group's 3,500,000 block of shares of Liberty Bank stock to be sold contrary to the terms of the security agreement and cross-collateralization provisions. This occurred when Marino placed with the Bank of Brazoria the loan financing for the entire investment group's block of stock. Marino's stock could not have been sold and released from the block without the active participation and approval of the Bank of Brazoria. Relator alleged that such release was done by the Bank of Brazoria, "a bank owned and/or controlled by Marino who was (and has remained) the chairman of its Board of Directors." In arranging at the Bank of Brazoria for the preferential disposition of his own stock from the security package, Marino made himself personally liable for his conduct; however, the bank was also liable for Marino's actions performed as its board chairman. That the bank will have an action against Marino for malfeasance should not prevent relator from obtaining relief against both Marino and the bank, which understandably seeks to avoid the consequences of its board chairman's conduct in the scope of his duties as its officer.

The test usually stated in determining a right to abatement is whether judgment in the first action (here, relator's counterclaim to the bank's original suit on relator's promissory note) would dispose of all issues in the second action (here, the Bank's refiled later suit on the same promissory note). *First State Bank v. Norris*, 611 S.W.2d 680, 684 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.). The relator asserted, among other defenses, rescission of his promissory note. A finding in the Harris County suit that the Bank of Brazoria, through the conduct of its chairman imputable to the bank, was involved in the fraudulent scheme that induced relator's signing of the note, would entitle relator to the legal remedy of rescission.

It is immaterial that the Bank of Brazoria from the outset may not have been part of the scheme that relator alleged. All conspirators are jointly and severally liable for wrongful acts done in furtherance of the conspiracy. This is true even though one of the conspirators enters into the conspiracy at a later time. *State v. Standard Oil Co.*, 130 Tex. 313, 107 S.W.2d 550, 560 (1937); *Mims v. Bohn*, 536 S.W.2d 568, 570 (Tex.Civ.App.—Dallas 1976, no writ).

Further, the required identity of issues between the parties need not be complete if, as to these issues, judgment in the first suit would foreclose the issues in the second suit. *Dolenz v. Continental Nat'l Bank*, 620 S.W.2d 572, 575 (Tex.1981); 2 R.

McDonald *Texas Civil Practice in District and County Courts* § 7.11 (rev.1982).

I believe that the requisite identity of issues and parties is shown in both the initial Harris County action and in the later-filed Brazoria County suit; that the Brazoria County district court abused its discretion in denying the plea in abatement; and that this Court should grant the petition for writ of mandamus.

I therefore dissent.