MAVERICK COUNTY WATER CONTROL
AND IMPROVEMENT DISTRICT NO.
I et al., Appellants,

v.

CITY OF LAREDO, Appellee.

No. 13729.

Court of Civil Appeals of Texas.

San Antonio.

April 19, 1961.

Rehearing Denied May 17, 1961.

Smith, McIlheran & Jenkines, Weslaco, Ewers, Toothaker, Ewers, Elick, Jones & Abbott, McAllen, A. G. Haigh, Sawnie B. Smith, Kelley, Looney, McLean & Littleton, Edinburg, Hill, King, McKeithan & Reynolds, Mission, for appellants.

R. J. Goodman, Robert Phelps, Mann, Byfield & Castillon, Laredo, for appellee.

POPE, Justice.

This case presents procedural problems of stream litigation occasioned by the absence of rules and statutes suited to this special class of case. Certain Hidalgo County litigants have appealed from an order of the District Court of Webb County temporarily enjoining them, as lower water diverters, from prosecuting a separate action in Hidalgo County against upper water diverters located between Falcon Dam and Kinney County. The point in the case is whether the Webb court acquired prior jurisdiction over the parties, issues, and subject matter, and therefore could enjoin prosecution of the Hidalgo case to avoid conflicts with the Webb court's prior jurisdiction. We conclude that the injunction should be dissolved for the following reasons: (1) The Webb suit and Hidalgo suit do not conflict because the parties, issues and relief sought are different. (2) The Webb court has prior jurisdiction over the flowing waters of the Rio Grande in a defined area, but that fact does not result in a conflict in adjudication. (3) After adjudication by the Hidalgo court, the correct procedure will require certification of its judgment, decree, or orders to the Webb court for enforcement insofar as they affect the waters in the custody of the Webb court.

The parties in the two actions are different, and the Webb court did not acquire prior jurisdiction over the Hidalgo parties. In 1954, City of Laredo, to protect its water supply, sued the Maverick County Water Control and Improvement District No. 1, and sixty-five individual water diverters in the Webb court. All defendants were above the City of Laredo. In March, 1957, forty-three of the defendants cross-claimed against the Maverick Water District and four individuals who were defendants in the original suit. In May of 1957 thirty-two new parties intervened in the Webb suit, all of whom were downstream from Laredo. The lowest diverter was located in Porcion 2 in Zapata County, just above Falcon Dam. Hence, this Webb suit had water claimants suing each other, located from Porcion 2, Zapata County, upwards along the river to Kinney County. The parties were in that situation until about three years later.

On May 21, 1960, the appellants here, ten water control and improvement districts located in Hidalgo County, filed a separate suit in Hidalgo County. These plaintiffs had never theretofore been brought into the Webb case nor sued by any of its parties. The Hidalgo plaintiffs sued seventy-seven defendants who had not theretofore been made parties in the Webb case. There were eighty-one defendants in the Hidalgo case who were also parties in the Webb case. There were thirteen other parties who were in the Webb case but were not in the Hidalgo case. Within less than a month after the Hidalgo case was filed, twenty-eight of its defendants who had previously not been named parties to the Webb case, intervened in the Webb case. Also, within less than a month after the Hidalgo case was filed, twenty-four persons who were already parties to the Webb case, filed a pleading in the Webb court and prayed that it grant an order compelling all the Hidalgo plaintiffs to interplead in the Webb court. The Webb court, without notice and hearing, ordered the Hidalgo plaintiffs to do two things.

First, it ordered them to file in the Webb court any claims they, the Hidalgo plaintiffs, asserted against any party in the Webb case. Second, it ordered the Hidalgo plaintiffs to bring into the Webb case all other water diverters not yet parties, located between Falcon Dam and Kinney County. The Webb court also set a hearing on a temporary injunction, and on June 24, 1960, after hearing, enjoined further proceedings in Hidalgo County. This appeal is from that decree.

The issues in the two actions are different, and the Webb court did not acquire prior jurisdiction over those asserted first in the Hidalgo court. The Webb case started in 1954, when the City of Laredo, as sole plaintiff, sued up-river diverters to protect and assure its municipal water supply. As a result of answers and cross-claims among the defendants, all above Laredo, the issues involved the claims of the municipality, the claims by riparians against the Maverick District as an appropriator, and the respective prescriptive rights among several parties. When, in May of 1957, the thirty-two water diverters below Laredo intervened in the Webb case the issues in that case were broadened. All the parties above Laredo, then, as to these new interveners, became upper diverters. These new lower diverters asserted both riparian and appropriative rights. On May 28, 1957, two diverters who owned lands in Porcion 2 of Zapata County, asked the court to take custody of the waters from Porcion 2 up to the headworks of the Maverick District. On June 2, 1957, the court entered its order taking judicial custody of that part of the river and declared that all parties may seek temporary relief for an equitable distribution pending final adjudication. For almost three years, no new parties or issues came into the Webb case.

On May 21, 1960, the ten Hidalgo water districts filed their suit in Hidalgo County and for the first time asserted that they had rights by force of certified filings and permits which were superior to those of all upper-riparians and upper-appropriators. They specially plead their certified filings and permits and that they antedated the rights and claims of the named defendants. They asked for an adjudication of their rights, for a removal of cloud cast on their claims by the defendants, and upon final trial for a permanent injunction against the unlawful diversion by defendants. They asked for no temporary injunction, and on the trial of this case swore that they would not do so. They asked for no relief against the City of Laredo.

■ The Webb court's order of June 24, 1960, which enjoined the ten Hidalgo plaintiffs from proceeding in Hidalgo County, should be dissolved because it is premature. The injunction was anticipatory of a future conflict. Presently, there are no orders from the two courts which are in conflict. Conflicts which arise out of the pendency of two suits are first avoided by urging a plea in abatement, but that step has been jumped in these proceedings. In Powers v. Temple Trust Co., 124 Tex. 440, 78 S.W.2d 951, 953, the Court said that there must be proof of something more than conflicting jurisdiction to resort to equity. "There must be evidence of the necessity for the use of injunction." This rule was re-stated after a careful review of the authorities by the Supreme Court in Lancaster v. Lancaster, 155 Tex. 528, 291 S.W.2d 303. See Russell v. Taylor, 121 Tex. 450, 49 S.W.2d 733, and Conn v. Campbell, 119 Tex. 82, 24 S.W.2d 813. Under some circumstances, as when a stalemate exists, prior jurisdiction may be protected by injunction. Cleveland v. Ward, 116 Tex. 1, 285 S.W. 1063.

■ The injunction should be dissolved because the two suits are different. When we examine the parties and issues in the Webb case at the time the Hidalgo case was filed, we see that no judgment rendered by the Webb court would have been res adjudicata with respect to any of the ten parties or their rights. The Webb case could have gone to final judg-

ment without affecting any of the Hidalgo plaintiffs or their rights. When the Hidalgo case was filed, no issued involved in that case was also involved in the Webb case. A decision determining rights among upper diverters does not decide the rights of non-party lower diverters. McCurdy v. Cage, 123 Tex. 558, 69 S.W.2d 56; Allen v. Read, 66 Tex. 13, 17 S.W. 115; Conn v. Campbell, 119 Tex. 82, 24 S.W.2d 813; 2 McDonald, Texas Civil Practice, §§ 7.09, 7.10; 1 Tex.Jur.2d, Abatement and Revival, §§ 31, 32, 34, 35.

■ In support of the Webb injunction, it is argued that the lower diverters were indispensable parties. It has never been the law of Texas that a lower diverter is an indispensable party in a suit between those who are upper to him. State of Texas v. Valmont Plantations, Tex.Civ.App., 346 S.W.2d 853; Zavala County Water Improvement Dist. No. 3 v. Rogers, Tex.Civ. App., 145 S.W.2d 919, 923; Wilson v. Reeves County Water Improvement Dist. No. 1, Tex.Civ.App., 256 S.W. 346; Ward County Water Imp. Dist. No. 3 v. Ward County Irr. Dist. No. 1, Tex.Civ.App., 237 S.W. 584, modified 117 Tex. 10, 295 S.W. 917. Even an intermediate diverter is not indispensable. Biggs v. Lee, Tex.Civ.App., 147 S.W. 709.

While much can be said for the "big" water suit in many kinds of cases, often water disputes concern a limited number of claims and adversaries. The course pursued in this case would ultimately mean that all diverters down to the Gulf of Mexico must be joined in the Webb case. If the ten Hidalgo plaintiffs are forced into the Webb case with orders to join all above them who are not already parties, they then become parties. If diverters still farther below then sue any of these ten Hidalgo appropriators, those new lower plaintiffs in turn would be forced into the Webb case until, by steps, all lower diverters would be parties in the Webb case. This is a practice which no decision has sanctioned. To approve such procedure would do violence to our existing practice with respect to parties in water litigation. It would require even simple disputes to be tried by the expensive and time-consuming "big case".

In support of the Webb injunction, it is also argued that the Webb court under Rule 43, Texas Rules of Civil Procedure, had the discretionary power to command the interpleader of the Hidalgo parties on petition of a stakeholder. The stakeholder argument is that the court has the res, the water, in its custody, and can order parties into the case who claim it. Perhaps we should clarify terms. In the Webb case, all the parties are claimants. The res is not in the hands nor under the control of any claimant, and none of the plaintiffs nor defendants in the Webb case is a stakeholder or in the nature of a stakeholder. See, 1 McDonald, Texas Civil Practice, § 3.39; Southwestern Life Ins. Co. v. Sanguinet, Tex.Civ.App., 231 S.W.2d 727; Dickerson v. Hopkins, Tex.Civ.App., 288 S.W. 1103, 1105. The true situation is that some of the Webb defendants, after the different suit was commenced in Hidalgo County, then brought a third-party action against the Hidalgo plaintiffs. Rule 38, T.R.C.P. The Hidalgo parties forcefully urge that in permitting such a third-party action against them by the Webb court the venue statutes will be ignored and violated, since venue for the claims of the Hidalgo water districts appears to be in Hidalgo County. Art. 1995, § 14, Vernon's Ann.Tex.Stats.; Lakeside Irrigation Co. v. Markham Irrigation Co., 116 Tex. 65, 285 S.W. 593; Lower Colorado River Authority v. Camp Warnecke, Tex.Civ.App., 267 S.W.2d 840. They urge that it is contrary to the venue rules which fix venue for this class of case in Hidalgo County. Under Rule 38(c) T.R.C.P., this privilege should be respected.

The Webb court which ordered the Hidalgo parties into the Webb case also affirmatively commanded the Hidalgo parties to join all water users not already parties, between Porcion 2 in Zapata County to Kinney County. Thus one group of claimants, not stakeholders, obtained an order

that another group, not stakeholders, shall search out and join other parties who are not indispensable parties. If the Webb third-party plaintiffs desire to join parties, it is their duty to do so. As stated in Ward County Water Imp. Dist. No. 3 v. Ward County Irr. Dist. No. 1, supra [237 S.W. 587]: "The individual water users were not necessary parties to this suit. If they were proper parties to any cause of action plead by the complaining defendants which could properly be litigated in this suit, it was their duty to seasonably make them parties * * *." Courts may consider the practical results to be achieved in their consideration of the pendency of a prior suit, but in the present suit too many rules of practice would be altered by upholding the injunction. See North Texas Coach Co. v. Morten, Tex.Civ.App., 92 S.W.2d 263.

■■■ We shall now consider the status of the water in the custody of the Webb court and determine whether such custody alters these principles. Custody of water is a relatively new concept, but water, like anything else over which parties may dispute, is subject to judicial protection pending judgment. Rule 171, T.R.C.P.; Hidalgo County Water Improvement District No. Two v. Cameron County, Tex.Civ.App., 253 S.W.2d 294, 298; Hidalgo County Water Imp. Dist. No. Two v. Cameron County Water Control & Improvement Dist., Tex.Civ.App., 250 S.W.2d 941, 945. As early as April, 1954, the Webb court by order established a gauging station on the river just above Laredo, declared that it would appoint a Master to advise the court of the flow, and enjoined all defendants from diverting water when the flow fell below stated minimums. On June 26, 1956, the court appointed a Master who performed a minimum of duties. On June 4, 1957, the court entered an order taking custody of a defined portion of the river.[1]

We are of the opinion that the court, upon the basis of pleadings of a substantial dispute involving a substantial quantity of water between a large number of diverters, covering the area described by order of the court as in its custody, and the appointment of a Master, vested prior jurisdiction, whether actual or potential, over the defined portion of the river. See, Ex parte Lillard, 159 Tex. 18, 314 S.W.2d 800.

We find an analogy in the cases of receivers. An order appointing a receiver gives the appointing court jurisdiction and exclusive control over the property even in the absence of actual possession of the property. Texas Trunk Ry. v. Lewis, 81 Tex. 1, 16 S.W. 647, 649; 36 Tex.Jur., Receivers, § 95. In the cited case, the Court quotes with approval from another case, saying:

"When the court in such cases appoints a receiver, it is because the court has first adjudged that the property is no longer to be under the control of the parties to the suit, but is thenceforth to be and is in the custody of the court. The receiver then becomes merely an agent through whom the court acts; and whether he be forth-

1. "It Is, Therefore, Accordingly Ordered, Adjudged and Decreed, as Follows:

"1. That this court takes judicial custody of the American share of the waters of the Rio Grande flowing in the reach of the Rio Grande between the headworks of Maverick County Water Control and Improvement District No. 1, in Kinney County, Texas, and the boundary line between Porciones 1 and 2 (abstracts 127 and 128, the original grantee of each of which was Miguel Cuellar) in Zapata County, Texas, until such time as a final judgment can be entered here-

in adjudicating this case on its merits. * * *

"2. That from and after the date hereof, above named interveners, shall, together with all other parties to this suit, have the right to seek, upon motion, temporary relief in the nature of an injunction, to enforce an equitable distribution of the waters of the Rio Grande now in custody of this court, pending a final adjudication of this case on its merits, provided all applications shall be made after notice and in conformity with the Rules of Civil Procedure."

with appointed by the court, * * * or a reference be made to a master or referee to appoint one, in either case the effect is the same. The title of the receiver is of the date at which it is ordered that a receiver be appointed."

Whether jurisdiction attaches at an earlier time is not necessary for this decision. See Riesner v. Gulf, C. & S. F. Ry. Co., 89 Tex. 656, 36 S.W. 53, 33 L.R.A. 171; Waters-Pierce Oil Co. v. State of Texas, 47 Tex.Civ.App. 162, 103 S.W. 836; Baylor University v. Chester Savings Bank, Tex.Civ.App., 82 S.W.2d 738, 744. In the present case, the court separated the water from the control of the claimants and there is judicial custody.

The Webb court's prior jurisdiction over the water did not oust the Hidalgo court's jurisdiction to adjudicate. The Hidalgo Court could adjudicate matters concerning different parties and different issues though the waters along the river where enforcement would be necessary were in the prior jurisdiction of the Webb court. Adjudication and enforcement of orders are not the same functions. 15 Tex.Jur. 2d, Courts, § 93. It is only when there is interference with the Webb court's jurisdiction over the waters, that an injunction will lie. No interference has been demonstrated, and such interference up to now is not threatened. The law has provided analogous situations. In Wheeler v. Williams, 158 Tex. 383, 312 S.W.2d 221, 227 Mr. Justice Smith discussed a similar contention of a possible conflict between courts. The Travis court had appointed a receiver for an insurance company. A later suit was filed in Bexar County for the determination of priorities of liens on property in the possession of the Travis County receiver. Quoting from Kirby v. Dilworth & Marshall, Tex.Com.App., 260 S.W. 152, the lack of conflict was explained:

"We think the adjudication of defendants in error's right to a lien on the property would in no wise interfere with the receiver's possession of the property. Neither actual possession of the property nor constructive possession of the property is in any manner involved in the question of adjudicating the matter of a lien in favor of or against either of the parties to this suit. The determination of the question of whether or not a lien exists in favor of defendants in error of any of the property in the receiver's hands has no more effect upon the possession of that property than does the adjudication of the question of whether or not defendants in error have a debt owing to them as alleged in the pleadings. Both questions are purely abstract, and are entirely disassociated with any character of physical relation to, or mental attitude toward, the actual property."

■ Applying the analogy, the Hidalgo court cannot take custody of the waters in the custody of the Webb court. 36 Tex. Jur., Receivers, § 94. The Hidalgo court may, however, proceed to adjudicate the claims which, in that case, are different from those of the Webb court, so long as the Webb court's custody is not disturbed. 21 C.J.S. Courts § 495. With respect to any restrictions upon water uses which will require enforcement within the area of the Webb court's jurisdiction, the Hidalgo court should order its judgments, decrees and orders certified for observance to the Webb court, insofar as they affect the waters in the custody of the Webb court. McCurdy v. Gage, Tex.Com.App. 123 Tex. 558, 69 S.W.2d 56; Ratner v. Wheeler, Tex.Civ. App., 301 S.W.2d 268; Lynch Davidson & Co. v. Hinnant, Tex.Civ.App., 93 S.W.2d 532; Baylor University v. Chester Sav. Bank, Tex.Civ.App., 82 S.W.2d 738, 744.

We conclude, therefore, (1) that to avoid a conflict between courts of coordinate jurisdiction, a plea in abatement should first be urged before resorting to the equitable remedy of injunction. (2) The court which first obtains actual or potential jurisdiction over the waters of a defined portion of a river may retain that jurisdiction with-

out interference from courts of coordinate jurisdiction. (3) A later filed suit brought by lower appropriators who are neither plaintiffs nor defendants in a prior suit between upper diverters, involves different parties and issues from the prior suit, since the rights of the lower diverters could not be determined by the prior suit. (4) Such later suit involving different parties and issues may not be abated or enjoined, but such court may proceed to make an adjudication of rights. (5) When such later filed suit involving different parties and issues requires the enforcement of its judgment, decree, or order within the portion of the river which is already in the judicial custody of a coordinate court, the judgment, decree or order shall be certified to the court having custody over the water, and that court shall enforce it.

We accordingly dissolve the temporary injunction and the Hidalgo court may proceed with its adjudication.