

# NUMBER 13-12-00466-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN RE SERVICIOS LEGALES DE MESOAMERICA S. DE R.L.

### On appeal from the County Court at Law No. 4
### of Nueces County, Texas.

## MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides, and Perkes**
**Memorandum Opinion by Justice Benavides**

Through a petition for writ of mandamus and writ of prohibition, relator, Servicios Legales de Mesoamerica S. de R.L. ("Servicios"), seeks: (1) a writ of mandamus directing the trial court[1] to abate a Nueces County suit pending the disposition of a suit in Hidalgo County; (2) a writ of mandamus ordering the trial court to vacate any and all

---

[1] The respondent in this cause is the Honorable J. Manuel Bañales, sitting by assignment.

orders that actively interfere with the Hidalgo County suit and the exercise of that court's jurisdiction; and (3) a writ of prohibition directing the trial court to take no further action in the Nueces County suit. This Court requested and received a response to the petition from the real party in interest, the Law Offices of Douglas A. Allison ("Allison"). We deny the petition for writ of mandamus and writ of prohibition.

## I. BACKGROUND

This case concerns two separate trial court cases: (1) a divorce proceeding filed in Hidalgo County between non-lawyers, and (2) a declaratory judgment action filed in Nueces County regarding the ownership of attorney's fees between law firms and attorneys. We address the history of these cases together.

### A. THE HIDALGO COUNTY DIVORCE CASE

In February 2005, Maria de Jesus Garcia filed an original petition for divorce from Wilfrido Rogelio Garcia in Hidalgo County (the "Hidalgo County suit"). Neither Maria nor Wilfrido is an attorney. The original petition for divorce identified Wilfrido as "Respondent" and Grupo Consejero Internacional and Servicios Legales as "Co-Respondents."[2] Maria identified both co-respondents as alter egos of Wilfrido. Maria alleged that Wilfrido fraudulently transferred assets to the co-respondents to defraud her of community property or her separate property rights in those assets.

On May 14, 2008, the trial court entered an order requiring the deposit of "any

---

[2] The petition for writ of mandamus asserts that Servicios Legales is the same entity as the Servicios in this case.

2

income or fees received or owed to the parties, Maria De Jesus Garcia and Wilfrido Rogelio Garcia and Servicios Legales De Mesoamerica," from specific entities, including "the Law Office of Baker, Brown and Dixon, or the Law Office of Douglas A. Allison, or the Law Office of Watts Law Firm, or the Law Office of Sico, White and Braugh, LLP, or the Law Office of Podhurst Orseck, or the Law Office of Speiser and Krause, or the Law Office of Fibich, Hampton and Leebron, LLP or the Law Office of Weitz and Luxenburg, or the Law Offices of Haggard, Parks, Haggard and Lewis, or any other entity owing funds," to be placed in the registry of the court.

On March 5, 2009, Law Funder, a legal finance company, intervened in the lawsuit. Law Funder asserted that it had purchased Wilfrido's rights, if any, to receive funds relating to certain lawsuits. Thereafter, Baker, Brown & Dixon, P.C. ("BBD") and John Baker filed an answer and counterclaim to Law Funder's intervention. On September 10, 2009, Wilfrido, Servicios, and Law Funder filed a "joint" motion for appointment of a receiver. According to the motion, some law firms had complied with the May 14, 2008 order requiring them to deposit the disputed funds into the registry of the court, but some had not. Therefore, the movants sought the appointment of a receiver "for the purpose of ascertaining the status of the cases" to which the May 14, 2008 order applied and "to collect the monies due and owing."

On October 1, 2009, the trial court appointed receivers Michael Flanagan, Eloy Sepulveda, and Sean Callagy for "the purpose of securing an accounting and to seek recovery of all claims, income and fees received or owed" to Wilfrido, Servicios, BBD, and Law Funder. The order provided that the receivers would retain Raymond Thomas of

3

Kittleman, Thomas & Gonzalez, LLP to represent the receivers for the purposes stated in the order.

On October 22, 2009, the receivers filed a petition in intervention against Allison and other law firms. The petition in intervention sought an accounting "on all matters referred" to the defendants, and to the extent an accounting showed money was owed by defendants on "matters referred to them by [Servicios] and/or its assignee, [BBD]," the petition sought an order compelling them to deposit the monies into the registry of the court "until such time as the Court adjudicates ownership of said funds."

### B.  THE NUECES COUNTY DECLARATORY ACTION

On January 25, 2010, Allison filed an original petition for declaratory judgment in Nueces County against Law Funder, BBD, Baker, and Pablo Ruiz Limon (the "Nueces County suit").[3]  According to the petition, Allison had received the attorney's fees due after concluding four separate lawsuits, but the defendants had claimed an interest in the attorney's fees from those four cases.

### C.  HIDALGO COUNTY DIVORCE CASE REMOVED TO FEDERAL COURT

On January 26, 2010, the Hidalgo County suit was removed to federal court because the Internal Revenue Service had joined the case through a third party petition filed by two of the intervention defendants. The parties engaged in extensive litigation in federal court. The record before this Court contains some, but not all, of the pleadings and transcripts from the federal court proceeding. On May 14, 2010, the federal court

---

[3] Limon was not served and is not a party to this original proceeding.

issued a preliminary injunction preventing Allison from proceeding with the Nueces County suit until further order. Without further delineating the federal court proceedings in any detail, Wilfrido, Baker, BBD, Servicios, and Law Funder settled all claims between each other and dismissed those claims with prejudice.

On March 29, 2012, after a series of hearings, the federal court remanded the case to Hidalgo County. The twenty-six page order of remand is entitled "Order Granting in Part Allison's Motion for Summary Judgment or Alternatively, Motion to Dismiss, Mooting Mrs. Garcia's Motion for Accounting, Mooting Receivers, SLM, Baker, and BBD's Motions to Quash and for Protective Order, Mooting Request for Status Conference, and Granting Receivers' Motion to Remand For Consideration of All Other Pending Motions." The order provides that the federal court was required to remand the case insofar as it could not issue a divorce decree or order a division of the Garcias' marital estate, thus, the case had to be remanded for those purposes. As indicated by its title, the order of remand addressed numerous substantive matters pending in that court.

First, the federal court briefly addressed Allison's motion for summary judgment or, alternatively, for the dismissal of the claims filed against him by the receivers. According to the order, the only claims pending against Allison were those asserted by the receivers in their petition in intervention, that is, the receivers' demand for accounting on all matters referred to Allison by Servicios and/or BBD, and to the extent Allison "owes money" on those matters, the receivers' request that the court order Allison to deposit those funds in the registry of the court until ownership of the funds is adjudicated. In its analysis of the motion, the court discussed: (1) the creation of the receivership pursuant

5

to the family code, which allowed the appointment of receivers "for the preservation and protection of the property of the parties," (2) that the Garcias were non-lawyers and that non-lawyers cannot legally share in attorney's fees, (3) that the record lacked evidence regarding whether Servicios was an entity with whom attorney's fees could be shared; and (4) the court's concern regarding "how attorney's fees owed to SLM and/or BBD and/or Law Funder" impact the "property of the parties" in such a way as to authorize the appointment of the receivers and the duties and authority given them.

The federal court stated that it had insufficient evidence before it to determine the extent to which Wilfrido had acted to diminish the value of the marital estate in order to justify the powers given to the receivers and that Wilfrido had disclaimed his interest in any recovery obtained by the receivers and taken the position that Maria could have any such recovery. Its order set out that: "[i]n such case, the Court cannot discern any need for a receivership, as any interest Garcia may have in fees owed to SLM may be awarded to Mrs. Garcia who may then choose whether to pursue recovery." The court denied Allison's summary judgment contending that the receivership was improper as to Allison because the federal court did not have jurisdiction to make a division of the marital estate, which militated against "reconsidering or in effect vacating a receivership created to preserve and protect property for that purpose." The court remanded the "propriety of the receivership" to the state court "for its careful consideration."

The federal court also addressed Allison's motion to be dismissed as a party on the grounds that Allison had completed the accounting demanded by the receivers and because Allison owed nothing to Servicios or BBD, which had been paid in full by Law

6

Funder on Allison's cases. The court granted Alison's motion for summary judgment and ruled that Allison had completed the accounting demanded by the receivers. However, the court concluded that material fact issues existed regarding whether Servicios and/or BBD retained an interest in the proceeds from Allison's cases, and thus the court could not dismiss Allison on the grounds that Servicios and BBD had been paid by Law Funder. In so holding, the court noted that, given that Allison was challenging the existence of the receivership itself, judicial economy cautioned against proceeding with a final determination and so remanded this issue for the state court to consider "in the event it determines that the creation of the receivership was permissible."

The federal court further discussed two motions filed separately by Maria and Allison asserting that the receivers' counsel, having represented multiple parties to the litigation, had an impermissible conflict of interest and should be disqualified. The court concluded that the "conflicts are troubling and should be revisited," but remanded these issues in deference to the state court's "exclusive authority" to appoint receivers under the Texas Family Code which was "memorialized in its order" appointing receivers' counsel, and stating that "with the understanding that it cannot vacate a portion of an order that it could not have entered, the [c]ourt must remand this issue for careful consideration by the state court."

Finally, the federal court addressed other pending miscellaneous orders. The order concluded that "most, if not all, of [the pending motions] should be resolved or mooted by the dissolution of the receivership that is no longer needed in this case as Mr. Garcia has disclaimed any interest in all assets that are the subject of the receivership."

The order further stated that: "[s]uch assets may be awarded to Mrs. Garcia who is then free to determine whether she desires to pursue them."

### D. ACTIVITY FOLLOWING REMAND IN THE HIDALGO COUNTY CASE

After remand, on April 5, 2012, the receivers filed a motion for contempt and to show cause against Allison, alleging that his actions in the Nueces County Suit violated the federal court injunction, which the receivers argued remained in effect until vacated by the Hidalgo County court. The receivers also filed a motion to reconsider the federal court's rulings on Allison's motion for summary judgment and motion to dismiss.

On April 11, 2012, the Hidalgo County court held a hearing on the receivers' motion for contempt and the following day issued a judgment of contempt against Allison on grounds he had violated the federal court injunctive order restraining him from prosecuting the Nueces County suit. On April 30, 2012, the Hidalgo County trial judge denied a motion that had been filed to disqualify or recuse him and referred the issue of his denial to the Presiding Judge of the Fifth Administrative Judicial Region, the Honorable J. Rolando Olvera. On July 6, 2012, the Honorable Dick Alcala disqualified the trial court judge and ordered that "all orders made by Judge Jesse Contreras from April 28, 2009, through July 2, 2012, in this case are null and void." The order of disqualification was the subject of an original proceeding in this Court and the Texas Supreme Court: *See In re Garcia*, No. 13-12-00440-CV, 2012 WL 3792112, at \*\*1–3 (Tex. App.—Corpus Christi Aug. 31, 2012, orig. proceeding [mand. denied]) (mem. op. per curiam). Specifically, Wilfrido Garcia and Michael Flanagan, Sean Callagy, and Eloy Sepulveda, in their capacity as receivers, sought to set aside the order of disqualification. *See id.* at

8

*1. This Court and the Texas Supreme Court denied relief. *See id.* at *3.[4]

### E. ACTIVITY FOLLOWING REMAND IN THE NUECES COUNTY CASE

Immediately following remand and on that same day, Allison filed a first amended original petition in the Nueces County suit adding Servicios as a defendant. Allison also filed an application for temporary restraining order and application for preliminary injunction. On March 29, 2012, the trial court issued a temporary restraining order and order setting hearing for preliminary injunction. On April 19, 2012, Law Funder, BBD, and Baker filed a plea in abatement. They contended that the Nueces County suit should be abated because the Hidalgo County suit was first in time, thus giving the Hidalgo County court dominant jurisdiction.

In the Nueces County suit, the hearing on the temporary injunction was held on May 10, 2012. The trial court granted Allison's application and issued the injunction on May 16, 2012. The injunction was appealed to this Court in *Law Funder, LLC, Baker Brown & Dixon, PC, and John Baker v. Law Offices of Douglas A. Allison*, currently pending in our cause number 13-12-00375. Servicios did not answer or appear in the Nueces County suit until June 5, 2012.

On June 12, 2012, Law Funder, BBD, Baker, and SLM filed a joint plea in abatement contending that the Nueces County suit should be abated pending resolution of the Hidalgo County suit. They filed a first supplement to the plea in abatement on June 19, 2012. The trial court held a hearing on the plea on June 20, 2012. On June

---

[4] The Texas Supreme Court denied relief without a written opinion in *In re Garcia*, No. 12-0904 (Tex. Dec. 14, 2012) (orig. proceeding).

9

21, 2012, the trial court denied the plea in abatement. The Nueces County court's order

denying the plea in abatement reads, in relevant part, as follows:

> At a hearing on May 12, 2012, the Court ruled that it had dominant jurisdiction over the parties [other than the Defendant SLM, because it was not before the Court at the time] and the controversies in this cause in relation to a related case involving the same parties in the 449th District Court of Hidalgo County. This Court's Order to that effect was signed on May 16, 2012. Based on Defendants' argument on the pending motions, the Defendants . . . have appealed this Court's May 16 Order to the Court of Appeals.

> On June 12, 2012 Defendants . . . filed their Joint Plea in Abatement. On June 15, 2012 Plaintiff filed its Motion to Deny Defendants' Joint Plea in Abatement as Waived and, alternatively, to Deny said plea as Moot. Counsel argued their respective motions.

> The Court first considered Plaintiff's objection to Defendants' plea on the basis of waiver. After considering the argument, the Court concluded that the Defendants [other than SLM] had waived any right to file their plea in abatement because they had failed to present the plea when the Court heard, considered and determined the issue of dominant jurisdiction. Accordingly, the Court sustained the objection and overruled the plea only as to the Defendants Law Funder, BBD and Baker. However, the Court allowed Defendant SLM to present its plea of abatement.

> The Court then heard the argument on the merits of SLM's plea in abatement. By agreement of counsel, the Court took notice of the evidence and the argument presented at the May 10, 2012 hearing as well as of the record of this case as of the June 20, 2012 hearing. Consistent with its ruling on May 10, 2012, the Court is of the opinion that the plea should be overruled. The Court further held that, had it considered the plea in abatement on its merits by the other three Defendants, the Court would likewise have overruled their joint plea for the same reasons.

On July 18, 2012, Servicios filed this original proceeding, including a two-volume

mandamus record, and a motion for emergency stay. By its sole issue, Servicios

contends that the trial court abused its discretion by denying its plea in abatement. This

Court granted the motion for emergency stay and requested a response to the petition for

10

writ of mandamus.

## II. STANDARD FOR MANDAMUS REVIEW

To be entitled to the extraordinary relief of a writ of mandamus, the relator must show that the trial court committed a clear abuse of discretion for which the relator has no adequate remedy at law. *In re Frank Motor Co.*, 361 S.W.3d 628, 630 (Tex. 2012) (orig. proceeding); *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 887 (Tex. 2010) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding)*; Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). The relator has the burden of establishing both prerequisites to mandamus relief. *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding). This burden is a heavy one. *Id.*; *Canadian Helicopters Ltd. v. Wittig*, 876 S.W.2d 304, 305 (Tex. 1994) (orig. proceeding).

A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d at 888; *Walker*, 827 S.W.2d at 840. The second requirement for mandamus relief, that the relator has no adequate remedy by appeal, "has no comprehensive definition" and is decided on a case-by-case basis. *See In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex. 2005) (orig. proceeding) (citing *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136).

Generally, the disposition of a plea in abatement is an incidental ruling which ordinarily does not support mandamus relief. *See In re Puig*, 351 S.W.3d 301, 306 (Tex. 2011) (original proceeding) (per curiam); *Abor v. Black*, 695 S.W.2d 564, 567 (Tex. 1985).

11

However, when a court issues an "order which actively interferes with the exercise of jurisdiction" by a court possessing dominant jurisdiction, mandamus relief is appropriate. *In re Puig*, 351 S.W.3d at 306; *see Perry v. Del Rio*, 66 S.W.3d 239, 258 (Tex. 2001); *Abor*, 695 S.W.2d at 567; *Curtis v. Gibbs*, 511 S.W.2d 263, 266–68 (Tex. 1974) (orig. proceeding). Further, mandamus relief may be available when a trial court refuses to abate based on the pendency of another action. *See In re ExxonMobil Prod. Co.*, 340 S.W.3d 852, 857 (Tex. App.—San Antonio 2011, orig. proceeding [mand. denied]); *see also In re Truck Ins. Exch.*, No. 12-12-00183-CV, 2013 WL 1760793, at *2 (Tex. App.—Tyler Apr. 24, 2013, orig. proceeding) (mem. op.).

We examine this case under the foregoing standard of review to determine if mandamus relief is appropriate. The respondent in this case had previously enjoined all other lawsuits, including the Hidalgo County suit, after having concluded that it had obtained dominant jurisdiction over this suit. *See In re Puig*, 351 S.W.3d at 306. Under these circumstances, and considering the benefits and detriments of mandamus review, we conclude that mandamus review is appropriate in this case because relator lacks an adequate remedy by appeal. *See In re Prudential Ins. of Am.*, 148 S.W.3d at 135–36.

### III. STANDARD FOR PROHIBITION REVIEW

A petition for a writ of prohibition is an "extraordinary" proceeding and should be used "sparingly." *In re Lewis*, 223 S.W.3d 756, 761 (Tex. App.—Texarkana 2007, orig. proceeding) (citing *Guerra v. Garza*, 987 S.W.2d 593, 594 (Tex. Crim. App. 1999)). To that end, the party seeking a writ of prohibition must demonstrate: (1) that it has no other adequate remedy at law, and (2) that it is clearly entitled to the relief sought. *See id.* A

12

writ of prohibition is a "creature of limited purpose." *Id.* The writ issues only to prevent the threatened commission of a future act. *See Tilton v. Marshall,* 925 S.W.2d 672, 676 n.4 (Tex. 1996) (orig. proceeding). The writ is designed to operate like an injunction issued by a superior court to control, limit, or prevent action in a court of inferior jurisdiction. *Holloway v. Fifth Ct. of App.*, 767 S.W.2d 680, 682–83 (Tex. 1989) (orig. proceeding). In this regard, a writ of prohibition has three functions: (1) preventing interference with higher courts in deciding a pending appeal; (2) preventing inferior courts from entertaining suits which will relitigate controversies which have already been settled by issuing courts; and (3) prohibiting a trial court's action when it affirmatively appears that the court lacks jurisdiction. *In re Lewis*, 223 S.W.3d at 761; *Tex. Capital Bank-Westwood v. Johnson*, 864 S.W.2d 186, 187 (Tex. App.—Texarkana 1993, orig. proceeding); *McClelland v. Partida*, 818 S.W.2d 453, 456 (Tex. App.—Corpus Christi 1991, orig. proceeding).

## IV. PENDING MOTIONS

Currently pending before the Court are several motions which are tied to the merits of this original proceeding: (1) Allison's motion to dismiss or deny the petition based on Servicios's adequate remedy at law or the lack of an adequate record; (2) Servicios's motion to strike portions of Allison's mandamus record; and (3) Allison's motion to strike portions of the mandamus record filed by Servicios. The Court received responses to the first two of these pending motions, but not the third.

We first address Allison's motion to dismiss or deny the petition on grounds that Servicios had an adequate remedy at law to attack the trial court's denial of its plea in

abatement.   According to Allison, Servicios could have joined an ongoing appeal arising from the same Nueces County trial court cause.   Specifically, Law Funder, LLC, Baker Brown & Dixon, PC, and John Baker have appealed an order granting a preliminary injunction in favor of the Law Offices of Doug Allison in our appellate cause number 13-12-00375-CV.

We disagree.   The appeal in cause number 13-12-00375-CV was from an order granting a temporary injunction, and the order was issued before Servicios answered and appeared in the underlying proceedings.   Servicios did not participate in the proceedings giving rise to that appeal.   Generally, and with limited exceptions not applicable here, only parties of record may appeal a trial court's judgment.   *In re Lumbermens Mut. Cas. Co.*, 184 S.W.3d 718, 723 (Tex. 2006) (orig. proceeding); *see Gunn v. Cavanaugh*, 391 S.W.2d 723, 725 (Tex. 1965) (stating rule that "only parties to the record may exercise [the right of appeal]"); *United Oil & Minerals, Inc. v. Costilla Energy, Inc.*, 1 S.W.3d 840, 844 (Tex. App.—Corpus Christi 1999, pet. dism'd) ("Once a final judgment has been entered, only parties of record may exercise the right of appeal.").

Under the applicable law, the appeal from the temporary injunction did not provide Servicios with an adequate remedy by appeal for the denial of its plea in abatement. Accordingly, to the extent that Allison's motion to dismiss or deny is premised on the adequacy of a remedy by appeal, we deny Allison's motion.

We now turn to the motions as they pertain to the sufficiency and correctness of the record in this proceeding.   As discussed herein, the parties to this original proceeding disagree regarding what constitutes the correct and complete contents of the mandamus

14

record and what documents were before the trial court when it ruled. Allison contends that the record lacks required documentation.[5] Both Allison and Servicios contend that portions of each other's records should be struck because, inter alia: (1) they were not presented to the trial court for its consideration in determining the plea in abatement, or (2) they were not filed in the underlying proceeding. We note that the record in this proceeding is voluminous and has evolved considerably since the petition was filed. Servicios originally filed a two-volume record with the petition, then filed a supplemental volume. Allison filed a two-volume record, then filed a third supplemental volume and a fourth supplemental volume.

Those seeking the extraordinary relief provided by an original proceeding must follow the applicable procedural rules.[6] Chief among these is the seminal requirement to provide the reviewing court with a complete and adequate record. *See Walker*, 827 S.W.2d at 837; *In re Le*, 335 S.W.3d 808, 813 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding). In determining whether or not the trial court has abused its discretion,

---

[5] The trial court's order on the plea in abatement specifies that the court took judicial notice of the evidence, the argument presented at the temporary injunction hearing, and the record of the case as of that date. The only exhibit offered at the hearing on the plea in abatement was the hearing transcript for the injunction hearing. The transcript for the temporary injunction hearing references 42 exhibits, none of which are attached in Servicios's original mandamus record, and which Servicios's counsel characterizes as "a lot of evidence, over 1,000-something pages" presented by Allison.

[6] Under the appellate rules, the relator in an original proceeding must certify that every factual statement in the petition is supported by competent evidence included in the appendix or record. *See* TEX. R. APP. P. 52.3(j). Every factual statement in the petition also must be supported by citation to competent evidence included in the appendix or record. *See id.* R. 52.3(g). The relator is also required to file a mandamus record containing a certified or sworn copy of every document that is material to its claim for relief and that was filed in any underlying proceeding. *See id.* R. 52.7(a)(1). Also, the relator is required to file a properly authenticated transcript of any relevant testimony from any underlying proceeding, including any exhibits offered into evidence, or a statement that no testimony was adduced. *See id.* R. 52.7(a)(2).

15

we must focus on the record that was before the court. *See In re Bristol–Myers Squibb Co.*, 975 S.W.2d 601, 605 (Tex. 1998) (orig. proceeding); *In re Taylor*, 113 S.W.3d 385, 389 (Tex. App.—Houston [1st Dist.] 2003, orig. proceeding). Thus, we generally do not consider documents that were not before the trial court when it made its ruling. *See Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 556 (Tex. 1990) (orig. proceeding); *Sabine OffShore Serv., Inc. v. City of Port Arthur*, 595 S.W.2d 840, 841 (Tex. 1979) (orig. proceeding); *In re Taylor*, 113 S.W.3d at 392; *Methodist Hosps. v. Tall*, 972 S.W.2d 894, 898 (Tex. App.—Corpus Christi 1998, no pet.).

However, there are certainly exceptions to this rule. *See, e.g., Henderson v. Floyd*, 891 S.W.2d 252, 254–55 (Tex. 1995) (orig. proceeding); *In re Emex Holdings L.L.C.*, No. 13-11-00145-CV, 2013 WL 1683614, at \*\*10–11 (Tex. App.—Corpus Christi Apr. 18, 2013, orig. proceeding) (mem. op. en banc). One such exception relates to the doctrine of mootness. *See, e.g., Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001); *Sabine Offshore Serv., Inc.*, 595 S.W.2d at 841. Because mootness is a matter that ordinarily arises after the rendition of the order subject to review, we determine mootness by considering evidence of matters occurring subsequent to the rendition of the order at issue. *See Meeker v. Tarrant County College Dist.*, 317 S.W.3d 754, 759 (Tex. App.—Fort Worth 2010, pet. denied); *Jackson v. Lubben*, 502 S.W.2d 860, 862 (Tex. Civ. App.—Dallas 1973, writ dism'd). Another such exception relates to an appellate court's own records. *See Ex parte Joyner*, 367 S.W.3d 737, 738 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (noting that an appellate court may take judicial notice of its own records); *Humphries v. Humphries*, 349 S.W.3d 817, 820 n.1 (Tex. App.—Tyler 2011, pet. denied)

(taking judicial notice of records from a previous appeal of the same underlying proceedings because a "number of relevant pleadings were not included in the record for this appeal"); *Trevino v. Pemberton*, 918 S.W.2d 102, 103 n.2 (Tex. App.—Amarillo 1996, orig. proceeding) (providing that an appellate court may take judicial notice of its own records in the same or a related proceeding involving the same or nearly same parties).

We review this original proceeding according to the foregoing principles. That is to say, we consider the record that was before the trial court at the time of its ruling. We further consider those documents that were filed in the Hidalgo County suit and in the removal proceedings insofar as those documents, for purposes of a mandamus proceeding based on dominant jurisdiction, certainly constitute "any underlying proceeding" for purposes of Texas Rule of Appellate Procedure 52.7. *See* TEX. R. APP. P. 52.7. Finally, we will consider those documents that were not presented to the trial court, but are nevertheless relevant, obviously important, and material to our review of the plea insofar as they implicate the doctrine of mootness or arise from our own records.

After due consideration of this original proceeding and its voluminous pleadings, we DENY Allison's "Motion to Dismiss/Deny Petition for Writ of Mandamus and Writ of Prohibition Motion for Extension of Time to File Response to Relator's Mandamus." Servicios's "Motion to Strike Portions of Mandamus Record" submitted by Allison and Allison's "Motion to Strike Portions of Mandamus Record" filed by Servicios are likewise DENIED. We now turn to the merits of this original proceeding.

### V. DOMINANT JURISDICTION

The proper method to assert a court's lack of dominant jurisdiction is to file a plea

17

in abatement. *In re Puig*, 351 S.W.3d at 303; *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 247–48 (Tex. 1988). The party seeking abatement has the burden of proof to establish the allegations in its motion to abate. *Flowers v. Steelcraft Corp.*, 406 S.W.2d 199, 199 (Tex. 1966); *S. Cnty. Mut. Ins. Co. v. Ochoa*, 19 S.W.3d 452, 469 (Tex. App.—Corpus Christi 2000, no pet.) (op. on reh'g); *Bernal v. Garrison*, 818 S.W.2d 79, 82 (Tex. App.—Corpus Christi 1991, writ denied). We review the trial court's action in granting or denying a plea in abatement using an abuse of discretion standard. *Wyatt*, 760 S.W.2d at 248.

Generally, when cases involving the same subject matter are brought in different courts in which venue would be proper, the court with the first-filed case has dominant jurisdiction and should proceed, and the other case should be abated. *Perry*, 66 S.W.3d at 252; *Wyatt*, 760 S.W.2d at 248; *In re Coronado Energy E&P Co., L.L.C.*, 341 S.W.3d 479, 481 (Tex. App.—San Antonio 2011, orig. proceeding); *Lee v. GST Transp. Sys.*, 334 S.W.3d 16, 18 (Tex. App.—Dallas 2008, pet. denied). The obvious reasons for abatement are conservation of judicial resources, avoidance of delay, and "comity, convenience, and the necessity for an orderly procedure in the trial of contested issues," or, in other words, to "prevent races from court to court by vigilant counsel." *Perry*, 66 S.W.3d at 252 (internal citations omitted).

The first-filed rule has several justifications, both jurisprudential and pragmatic. *Id.* When a matter is filed in a court of competent jurisdiction, that court's action is necessarily exclusive because it is impossible for two courts to make a final determination regarding the same controversy between the same parties at the same time. *Id.*

Pragmatically, the first-filed rule also promotes efficiency: proceedings earlier begun may be expected to be earlier concluded. *Id.* A final justification is fairness—in a race to the courthouse, the winner's suit should have dominant jurisdiction. *Id.*

A trial court abuses its discretion when it refuses to grant a plea in abatement when abatement is mandatory, that is, "when there exists a complete identity of parties and controversies between it and an earlier suit." *Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 1, 26 (Tex. 2008) (internal quotations omitted); *see Dolenz v. Continental Nat'l Bank of Fort Worth*, 620 S.W.2d 572, 575 (Tex. 1981); *Curtis*, 511 S.W.2d at 266–68.

In contrast, the granting of a plea of abatement in a later-filed suit is discretionary when there is a lack of identity between the causes. *Coastal Oil & Gas Corp.*, 268 S.W.3d at 26; *Dolenz*, 620 S.W.2d at 575. When there is a lack of identity, a court may abate an action for reasons of comity, convenience and orderly procedure, looking to the practical results to be obtained, dictated by a consideration of the inherent interrelation of the subject matter of the two suits. *Coastal Oil & Gas Corp.*, 268 S.W.3d at 26, *Wyatt*, 760 S.W.2d at 247–48; *Dolenz*, 620 S.W.2d at 575; *see also Timon v. Dolan*, 244 S.W.2d 985, 987 (Tex. Civ. App.—San Antonio 1951, no writ). In such instances, it is "not required that the exact issues and all the parties be included in the first action before the second is filed, provided that the claim in the first suit may be amended to bring in all necessary and proper parties and issues." *Wyatt*, 760 S.W.2d at 247. "In determining whether an inherent interrelationship exists, courts should be guided by the rule governing persons to be joined if feasible and the compulsory counterclaim rule." *Id.* These are

19

"matters committed to the sound discretion of the trial court." *Coastal Oil & Gas Corp.*, 268 S.W.3d at 26; *see Dolenz*, 620 S.W.2d at 575. Accordingly, we examine whether Servicios established that: (1) the Hidalgo County suit commenced first; (2) the Hidalgo County suit was still pending; (3) the Hidalgo County suit could be amended to include all of the parties; and (4) the controversies are the same or the Hidalgo County suit could be amended to include all of the claims. *See In re Coronado Energy E & P Co., L.L.C.*, 341 S.W.3d at 482; *S. Cnty. Mut. Ins. Co.*, 19 S.W.3d at 468.

## VI. ANALYSIS

Servicios contends that this case meets the foregoing requirements for abatement. It contends that the Hidalgo suit was the first in time, both suits involve the same controversy, all parties to the Nueces Suit that are non-parties to the Hidalgo Suit can feasibly join the Hidalgo Suit, and the Nueces Suit should have been abated because the Hidalgo Suit will, or at the very least may, adjudicate some if not all of the issues pending in the Nueces suit. More specifically, Servicios argues that the receivers filed their petition in intervention against Allison in Hidalgo County before Allison filed suit in Nueces County. Servicios further contends that the case concerns the exact same money—the funds that are at issue in the declaratory judgment action are the same funds for which the receivers in the Hidalgo County suit are seeking to adjudicate ownership.

We first examine whether abatement was mandatory, that is, whether there is a complete identity of parties and controversies between the two suits. *Coastal Oil & Gas Corp.*, 268 S.W.3d at 26. There is not a complete identity of parties or controversies between the two suits. The Hidalgo County suit is a divorce action between Wilfrido and

Maria where the main issue appears to be the division of the marital estate. The Hidalgo County suit involves, as an ancillary matter, the collection of legal fees allegedly owed to Wilfrido. At this point in time, it is unclear precisely who the parties are to the Hidalgo County suit or the specific causes of action remaining between the parties. "It is clear that a court of appeals may not grant mandamus relief when the petition and record require the court to speculate." *In re Cap Rock Elec. Coop., Inc.*, 35 S.W.3d 222, 226 (Tex. App.—Texarkana 2000, orig. proceeding); *In re Colony Ins.*, 978 S.W.2d 746, 747 (Tex. App.—Dallas 1998, orig. proceeding). We note that Allison asserts that Servicios is not currently a party to that proceeding. Moreover, based on the record, Wilfrido has disclaimed any interest in any attorney's fees collected in that suit. In contrast, the Nueces County suit is a declaratory action filed by Allison against Law Funder, BBD, Baker, and Servicios to determine the ownership of attorney's fees in four specific cases. We conclude that, based on the record presented, there is not a complete identity of parties and controversies between the Nueces County suit and the Hidalgo County suit. Accordingly, abatement was not mandatory. *Coastal Oil & Gas Corp.*, 268 S.W.3d at 26; *Dolenz*, 620 S.W.2d at 575.

We next examine whether the trial court acted arbitrarily or unreasonably in denying the plea. *Dolenz*, 620 S.W.2d at 575. Specifically, we examine the inherent interrelation of the subject matter of the two suits and whether the claims in the Hidalgo County suit can be "amended to bring in all necessary and proper parties and issues." *Wyatt*, 760 S.W.2d at 247

Based on the record presented, we conclude that the Hidalgo County suit is not

inherently interrelated to the Nueces County suit and that the Hidalgo County suit cannot be amended to include all necessary parties and issues. While the Hidalgo County suit at one time included causes of action filed by the receivers against various ancillary parties, that is, law firms, including Allison, regarding the ownership of attorney's fees, the order appointing the receivers has been struck as void. Moreover, the trial court had before it argument, authority, and evidence that the receivers, from the inception, lacked the power to adjudicate claims over attorney's fees in a divorce estate between non-lawyers. The record also shows that the remaining claims against Allison in the Hidalgo County suit concern whether Servicios and/or BBD have been paid by Law Funder or whether they retain an interest in the proceeds from Allison's cases, and not whether Allison owes money to Wilfrido or Maria. Further, the receivership has been rendered essentially moot by Wilfrido's relinquishment of claims to the subject property. Under these circumstances, we conclude that Servicios failed to carry its burden to show that the two cases showed an inherent interrelationship or that the Hidalgo County suit could be amended to include all parties and controversies. *See id.*

Finally, Servicios contends that the Nueces County suit should have been abated because "it disturbs the possession of property that is in the control of the [Hidalgo County court] by virtue of (1) the order directing the deposit of said property into the court's registry and (2) the receivership order." Servicios contends that an order appointing a receiver gives the appointing court jurisdiction and exclusive control over the property even in the absence of actual possession of the property. *See Maverick Cnty. Water Control & Imp. Dist. No. 1 v. City of Laredo*, 346 S.W.2d 886, 890 (Tex. Civ. App.—San

22

Antonio 1961, writ ref'd n.r.e.). The May 14, 2008 order requires the deposit of any "income or fees" owed to Maria, Wilfrido, or Servicios, from, inter alia, Allison, to be deposited into the registry of the court. The order was entered before Allison was made a party to that suit and Allison did not deposit any funds into the registry of the court. As stated previously, the order appointing the receivers has been held to be void. Under these circumstances, the disputed funds were not under control of the Hidalgo County court. Thus, abatement was not required. *See id.*

Considering the foregoing analysis, we conclude that the trial court did not abuse its discretion in denying Servicios's plea in abatement.

## VII. CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus and writ of prohibition, the response, and the applicable law, is of the opinion that Servicios has not met its burden to obtain relief. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36. Accordingly, the stay previously imposed by this Court is LIFTED. *See* TEX. R. APP. P. 52.10(b) ("Unless vacated or modified, an order granting temporary relief is effective until the case is finally decided."). The petition for writ of mandamus and prohibition is DENIED. *See id.* 52.8(a).

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
6th day of March, 2014.

23