2025 Tex. Bus. 32



THE BUSINESS COURT OF TEXAS
EIGHTH DIVISION

| | | |
|---|---|---|
| ELIZABETH MARTENS | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Cause No. 25-BC08B-0009 |
| | § | |
| LAMKIN LAND & CATTLE | § | |
| COMPANY, LLC and STEPHANIE | § | |
| EZZELL, | § | |
| | § | |
| *Defendants.* | § | |

---

**OPINION AND ORDER**

---

*Syllabus*[*]

*This case presents two issues: (i) whether the Business Court has subject-matter jurisdiction over the plaintiff's application for an involuntary winding-up of a limited liability company, and, if so, (ii) whether an earlier-filed lawsuit in district court between the same parties requires dismissal or abatement of this action under the doctrine of dominant jurisdiction. The Court concludes it has subject-matter jurisdiction and that the district court case and this case are not sufficiently interrelated to invoke dominant jurisdiction. Accordingly, the defendants' motion to dismiss, plea to the jurisdiction, and plea in abatement are denied.*

---

[*] The syllabus was created by court staff and is provided for the convenience of the reader. It is not part of the Court's opinion, does not constitute the Court's official description or statement, and should not be relied upon as legal authority.

**OPINION**

¶ 1     On July 7, 2025, Defendants Lamkin Land & Cattle Company, LLC ("the LLC") and Stephanie Ezzell ("Ezzell") (jointly, "Defendants") filed a Motion to Dismiss, Plea to the Jurisdiction, and Plea in Abatement. Plaintiff Elizabeth Martens ("Martens") filed her Response on August 1, 2025.

¶ 2     After oral argument on August 6, 2025, the Court denied all three requests and said a written opinion would follow. This is the Opinion.

## I.     BACKGROUND

¶ 2     There are two lawsuits pending between the parties. The Court will discuss them in turn.

### A.     The Parker County case.[1]

¶ 3     The Parker County case arises out of Defendants' alleged failure to pay Martens her share of the proceeds from the sale of real property owned by the LLC. Martens and Ezzell are sisters and 50/50 owners of the LLC. Ezzell has acted as the LLC's sole manager at all relevant times. Before the events at issue, the LLC owned five parcels of property in Parker County, including a 200-acre tract of land ("Tract One"). Martens alleges that in July 2022 she learned by happenstance that Ezzell had sold Tract One for $5.5 million.

---

[1] The facts in this section reflect the allegations in Plaintiff's Third Amended Petition—the live pleading—in the Parker County case.

¶ 4     Martens demanded information about the sale. In September 2022, after Defendants failed to respond, Martens filed suit in Travis County for failure to distribute available funds, breach of contract, abuse of discretion, unjust enrichment, money had and received, and constructive trust, as well as an application for appointment of a receiver. Martens requested damages for her share of the sales proceeds.

¶ 5     After Defendants appeared in the suit, Ezzell disclosed that the sale of Tract One netted $4,757,609. Martens demanded her share ($2,378,804) of those proceeds.

¶ 6     In January 2023, the case was transferred to the 415th Judicial District Court in Parker County. In February 2025, that court ruled against Martens on her application for appointment of a receiver and claims for constructive trust, unjust enrichment, and money had and received. The remaining claims in the case are breach of contract, failure to distribute available funds, and abuse of discretion.

¶ 7     The pleading deadline in the Parker County case passed on December 6, 2024. On March 4, 2025, Martens sought Defendants' consent to file a motion for leave to amend her Third Amended Petition to add a request for the involuntary winding-up and termination of the LLC under Texas Business Organizations Code § 11.314. Defendants said they would oppose such motion. Instead of filing the motion, Martens initiated this suit in the Business Court.

¶ 8     The Parker County case is scheduled for trial on September 8, 2025.

**B.     The Business Court case.**[2]

---

[2] The facts in this section reflect the allegations in Plaintiff's Original Petition, which is the live pleading.

¶ 9   This case arises out of Ezzell's alleged mismanagement of the LLC.

¶ 10   Before Martens and Ezzell became owners of the LLC, the company was owned by Owl Creek Investments, Ltd., a family partnership formed by the sisters' parents.[3] Following the dissolution of Owl Creek, the LLC's membership interests were distributed 50/50 to Martens and Ezzell.

¶ 11   The LLC's regulations provide that a majority (more than 50%) of these interests must vote to elect a manager. Because the regulations provide no procedure for breaking a tie, Martens and Ezzell have failed to elect a manager since 2002. Instead, Ezzell "unilaterally declared herself to be Manager (and did so without any authority) and purports to act as such." Ezzell has provided little or no information to Martens regarding the LLC and has prevented Martens from having a voice in management.

¶ 12   In addition to shutting Martens out of the LLC, Ezzell has allegedly committed numerous other acts that form the bases for Martens's request to wind up the company.

1.   *The unauthorized and undisclosed sale of Tract One.*

¶ 13   Martens alleges that Ezzell lacked authority to sell Tract One and failed to inform Martens of the sale.

2.   *Tax fraud.*

¶ 14   Martens alleges that on November 16, 2022, Ezzell provided her a settlement statement reflecting net proceeds of $4,757,609 from the sale of Tract One. Around this

---

[3] The parents also formed the LLC and were its initial members.

time, Ezzell's counsel confirmed to Martens that the sale resulted in capital gains of roughly $4 million and long-term capital gains taxes of $1 million. Based on this, Martens paid her 50% share of the estimated taxes to the IRS in April 2023.

¶ 15    In May 2023, Ezzell sent Martens a Schedule K-1 reflecting a total taxable gain for the LLC of only $913,028—not $4 million. Because this reported gain vastly understated the actual gain, Martens alleges that Ezzell "deliberately caused Lamkin LLC to engage in federal tax fraud by under-reporting by more than $3,000,000 the long-term capital gains that resulted from the sale."

### 3. The depletion of assets and personal use of LLC funds.

¶ 16    Martens alleges that Ezzell has misappropriated LLC funds for her own use and benefit since the sale of Tract One. This includes using LLC funds to purchase and resell other real property for a net loss of at least $120,000.

¶ 17    Martens also alleges that Ezzell has embezzled LLC funds for her own use and benefit, including almost $600,000 in 2025 alone.

¶ 18    On June 3, 2025, Martens filed the original petition in this case. Her sole claim is for involuntary termination of the LLC because "[t]he economic purpose of Lamkin LLC is and is likely to be unreasonably frustrated," "Ezzell has engaged in conduct relating to Lamkin LLC's business that makes it not reasonably practicable to carry on the business with Ezzell," and "[i]t is not reasonably practicable to carry on Lamkin LLC's business in conformity with its governing documents." Martens makes no claim for damages for the sale of Tract One.

**C.** **Defendants move to dismiss or, in the alternative, abate the suit.**

¶ 19   On July 7, 2025, Defendants filed their Motion to Dismiss, Plea to the Jurisdiction, and Plea in Abatement, requesting the Court to dismiss this action on grounds that Martens's claim for involuntary termination is a compulsory claim required to be brought in the Parker County case and thus dates back to 2022, which would effectively deprive the Business Court—which has authority only over cases commenced on or after September 1, 2024—of jurisdiction. Alternatively, Defendants request that the Court abate the case in deference to the alleged dominant jurisdiction of the Parker County court.

¶ 20   In response, Martens argues that her claim to terminate the LLC is within the jurisdiction of the Business Court and does not predate September 1, 2024, and that the doctrine of dominant jurisdiction does not apply because the two cases are not inherently interrelated as required by Texas Supreme Court precedent.

¶ 21   Because Defendants presented a single, unified argument for both their Motion to Dismiss and Plea to the Jurisdiction, the Court will likewise address both requests together in this Opinion, treating them as a plea to the jurisdiction. Defendants did not, for example, identify any specific rule supporting the Motion to Dismiss—such as Texas Rule of Civil Procedure 91a—or assert any basis for dismissal other than the jurisdictional challenge raised in their Plea to the Jurisdiction.

## II.   LEGAL STANDARDS

¶ 22   The Court outlines below the applicable standards for pleading and proof pertaining to pleas to the jurisdiction and pleas in abatement.

## A.    Plea to the jurisdiction.

¶ 23    A plea to the jurisdiction is a procedural vehicle to dispute a court's subject-matter jurisdiction.[4] A plea to the jurisdiction may challenge the pleadings, the existence of jurisdictional facts or both.[5]

¶ 24    Where, as here, the jurisdictional dispute is not related to the amount in controversy, "a court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised."[6] When doing so, "[t]he court should, of course, confine itself to the evidence relevant to the jurisdictional issue."[7]

¶ 25    The process of analyzing a challenge to jurisdictional facts in a plea is one that "generally mirrors that of a summary judgment."[8] If the plea challenges a plaintiff's factual allegations with supporting evidence that refutes jurisdiction, the burden then shifts to the plaintiff to raise a genuine issue of material fact.[9]

## B.    Plea in abatement.

¶ 26    A plea in abatement challenges a plaintiff's pleading by presenting facts indicating the case should be halted until a defect is corrected.[10] A plea in abatement may be used to draw a court's attention to a possible dominant jurisdiction issue—that is,

---

[4] *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 232 (Tex. 2004).

[5] *Tex. Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020); *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018).

[6] *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000).

[7] *Id.*

[8] *City of Austin v. Powell*, 704 S.W.3d 437, 446 (Tex. 2024) (quoting *Miranda*, 133 S.W.3d at 228).

[9] *Miranda*, 133 S.W.3d at 221; *C Ten 31 LLC ex rel. Summer Moon Holdings LLC v. Tarbox*, 2025 Tex. Bus. 1, ¶ 44, 708 S.W.3d 223, 241 (3rd Div.).

[10] *Lagow v. Hamon ex rel. Roach*, 384 S.W.3d 411, 418 (Tex. App.—Dallas 2012, no pet.).

"[w]hen . . . two courts have concurrent jurisdiction to determine inherently intertwined issues. . . ."[11] To be entitled to abatement based on dominant jurisdiction, a defendant must show there is an "inherent interrelationship" between two cases, as detailed later.[12] In the absence of such a showing, both suits may proceed.[13]

### III.    PLEA TO THE JURISDICTION

¶ 27    Defendants' Plea to the Jurisdiction is based on a two-fold argument: first, that Martens's claim for involuntary termination of the LLC is a "compulsory claim" required to be brought in the Parker County case filed in 2022; and second, that the Business Court lacks jurisdiction over actions commenced before September 1, 2024 under House Bill 19, the Court's enabling legislation.[14] In essence, Defendants argue that this case's filing date relates back to the 2022 Parker County filing date, negating jurisdiction.

¶ 28    The second prong of Defendants' argument is easily resolved. Defendants are correct that this Court lacks jurisdiction over actions commenced before September 1, 2024. This division and others have confirmed this, and Martens does not dispute the point.[15]

¶ 29    The first prong of Defendants' argument is more complicated. Defendants contend that Martens's sole claim here—for involuntary termination of the LLC—arises

---

[11] *In re Puig*, 351 S.W.3d 301, 305 (Tex. 2011) (per curiam) (orig. proceeding).
[12] *In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 292 (Tex. 2016) (orig. proceeding).
[13] *Id.*
[14] Defs.' Mot. to Dismiss, Plea to the Jurisdiction, and Plea in Abatement ¶¶ 6–7.
[15] *See Tema Oil & Gas Co. v. ETC Field Servs., LLC*, 2024 Tex. Bus. 3, ¶ 18, 705 S.W.3d 226, 232 (8th Div.); *Lone Star NGL Prod. Servs. LLC v. EagleClaw Midstream Ventures, LLC*, 2024 Tex. Bus. 8, ¶ 19, 705 S.W.3d 243, 252–53 (11th Div.).

from "the same facts, transaction, or occurrence" as the Parker County case, using language mirroring the compulsory counterclaim standard in Texas Rule of Civil Procedure 97(a).[16]

¶ 30    Martens disagrees, of course. She maintains that the Parker County litigation concerns only her claim for distribution of proceeds from the sale of one parcel of land (Tract One), while this case seeks to terminate the LLC and partition its *remaining* assets—including four other tracts of land—based on "ongoing acts of self-dealing, theft, and squandering of LLC assets—any one of which independently supports termination." She further emphasizes that the conduct giving rise to this action occurred well after September 1, 2024, identifying six alleged misappropriations in 2025 alone.[17]

¶ 31    Comparing the two cases, the Court is not persuaded that this action arises from the same facts, transaction, or occurrence as the Parker County case. The Parker County lawsuit seeks monetary relief for a single property sale. This case seeks wholly different relief—the termination of the LLC itself and the disposition of four other tracts of land—based on a much broader range of alleged conduct, including (1) improper self-appointment as manager; (2) tax fraud; (3) asset diminution; (4) theft of LLC funds; and (5) exclusion of Martens from management. This action does not assert any claim for failure to distribute the Tract One proceeds, which is the gravamen of the Parker County case.

---

[16] Defs.' Mot. to Dismiss, Plea to the Jurisdiction, and Plea in Abatement ¶ 6. *See also* TEX. R. CIV. P. 97(a) (providing that a counterclaim is compulsory if "it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . ."). For more discussion on the compulsory counterclaim rule and whether the requirements of the rule are met, see *infra* Opinion and Order sec. IV(C).
[17] Pl.'s Resp. at 3–5.

¶ 32    Even looking beyond the pleadings, Defendants have presented no evidence that the Court lacks subject-matter jurisdiction. Although they attached several exhibits from the Parker County case—including Martens's draft (but unfiled) motion for leave to amend, related email correspondence, her Third Amended Petition, an agreed scheduling order, and a summary-judgment order—none demonstrates that Martens's claim to terminate the LLC arose before September 1, 2024 or was required to be brought in the Parker County case.[18]

¶ 33    Because the claims, issues, and relief sought in the two cases are distinct, and the facts underlying this action do not arise from the same transaction or occurrence as the Parker County litigation, Martens's claim is not compulsory. Therefore, the Plea to the Jurisdiction and the related Motion to Dismiss are denied.

## IV.    PLEA IN ABATEMENT

¶ 34    Alternatively, Defendants ask the Court to rule that the Parker County court has dominant jurisdiction and to abate this action pending trial there. The Court concludes that dominant jurisdiction does not apply because the cases are not inherently interrelated, and, even more, practical considerations make abatement inappropriate.

### A.    Development of the dominant jurisdiction doctrine in Texas.

#### 1.    *Early emphasis on the need for complete identity of parties and issues.*

¶ 35    One of the earliest Texas Supreme Court cases on dominant jurisdiction, *Cleveland v. Ward,* involved two competing lawsuits over the same promissory notes, one

---

[18] Defs.' Mot. to Dismiss, Plea to the Jurisdiction, and Plea in Abatement, Exs. A–E.

in Johnson County, first filed, and one in Dallas County.[19] The Court observed that the suits involved "the same set of facts," "identically the same transactions," and that the relief in one would be res adjudicata to the other.[20] To resolve the conflict, the Court articulated a guiding principle: two courts should not simultaneously adjudicate the same controversy between the same parties, and because the first court's jurisdiction is exclusive, any conflicting orders from the second court are void.[21] The Johnson County court therefore had dominant jurisdiction, and the Dallas County suit should have been abated.[22]

¶ 36    Nearly fifty years later, in *Curtis v. Gibbs*, a custody dispute produced two more competing lawsuits—first in Bowie County, then in Dallas County.[23] The result was a series of conflicting orders from the courts, some in favor of the father, some in favor of the mother.[24] After the father sought mandamus relief, the Texas Supreme Court held that "[a]ny subsequent suit involving the same parties and the same controversy must be dismissed."[25] Because both suits sought to modify the same divorce decree, the Bowie County court had dominant jurisdiction.[26]

¶ 37    The Supreme Court struck a similar chord seven years later in *Dolenz v. Continental National Bank of Fort Worth*, involving parallel cases in Midland and Tarrant

---

[19] *Cleveland v. Ward*, 285 S.W. 1063, 1066 (Tex. 1926) (orig. proceeding), *disapproved of on other grounds by Walker v. Packer*, 827 S.W.2d 833 (Tex. 1992) (orig. proceeding).
[20] *Id.* at 1069.
[21] *Id.* at 1071.
[22] *Id.* at 1070–72.
[23] *Curtis v. Gibbs*, 511 S.W.2d 263, 265 (Tex. 1974) (orig. proceeding).
[24] *Id.*
[25] *Id.* at 267.
[26] *Id.* at 267–68.

Counties.[27] *Dolenz* reiterated that when there is "complete identity of parties and controversies between the prior and subsequent suits," the second court "has no right to take any other action except to sustain the plea in abatement."[28] When complete identity is lacking, however, the Court clarified that a trial court may, in its discretion, abate for reasons of comity, convenience and orderly procedure, considering "the practical results to be obtained, dictated by a consideration of the inherent interrelation of the subject matter of the two suits."[29] Because the Midland and Tarrant County cases lacked complete identity and a judgment in the first action would not resolve all issues in the second, abatement was not required.[30]

### 2. More recent cases use an "inherent interrelation test."

¶ 38     Seven years later, the phrase "inherent interrelation" from *Dolenz* became central in *Wyatt v. Shaw Plumbing Co.*[31] There, a homebuilder sued a plumbing contractor in Duval County for fraud and DTPA violations; in response, the contractor sued the homebuilder in Nueces County over the same project.[32] Consistent with prior decisions, the Court held that the subcontractor's suit was a compulsory counterclaim required to be brought in the first-filed case.[33] The Court explained that dominant jurisdiction exists when two suits are "inherently interrelated," which does not require identical issues and parties,

---

[27] *Dolenz v. Cont'l Nat'l Bank of Fort Worth*, 620 S.W.2d 572 (Tex. 1981).
[28] *Id.* at 575. (citing *Curtis*, 511 S.W.2d at 267).
[29] *Id.* (quoting *Timon v. Dolan*, 244 S.W.2d 985, 987 (Tex. App.—San Antonio 1951, no writ)).
[30] *Id.*
[31] *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 246 (Tex. 1988), *overruled on other grounds by J.B. Hunt*, 492 S.W.3d at 292–93.
[32] *Id.*
[33] *Id.* at 247.

so long as the first suit could be amended to include them.[34] The Court further held that whether suits are inherently interrelated should be assessed using the compulsory counterclaim rule:

> A counterclaim is compulsory if: (1) it is within the jurisdiction of the court; (2) it is not at the time of filing the answer the subject of a pending action; (3) the action is mature and owned by the pleader at the time of filing the answer; (4) it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; (5) it is against an opposing party in the same capacity; and (6) it does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction.[35]

¶ 39    Importantly, the *Wyatt* Court took pains to distinguish *Dolenz*, explaining that abatement was unnecessary in *Dolenz* because "a judgment in the first suit would not foreclose all issues between [the parties]."[36] In other words, the second case in *Dolenz* involved issues that would remain to be litigated regardless of the first case's outcome.

¶ 40    Most recent is the Supreme Court's decision in *In re J.B. Hunt Transport, Inc.*, involving two lawsuits related to the same motor vehicle accident: one filed in Waller County by a trucking company seeking property damages, the second in Dallas County by the other vehicle's occupants seeking personal-injury damages.[37] The Court started its analysis by asking whether there was an "inherent interrelation between the subject matter of the two pending lawsuits that triggers a dominant-jurisdiction question."[38] If not, the Court emphasized that both cases could proceed.[39] The Court then used the compulsory

---

[34] *Id.*

[35] *Id.* (citing TEX. R. CIV. P. 97(a), (d)).

[36] *Id.* at 248.

[37] *J.B. Hunt*, 492 S.W.3d 287, 289.

[38] *Id.* at 292.

[39] *Id.*

counterclaim rule to conclude that the two suits were inherently interrelated because they involved competing claims arising from the same accident.[40]

¶ 41    Lower courts, too, have shed light on what it means for cases to be inherently interrelated. For example, cases can be inherently interrelated even if different legal theories are presented, if the theories are merely separate means to acquire the same relief.[41] And while courts usually consider the compulsory counterclaim rule when deciding if cases are inherently interrelated, that rule does not have to apply for a court to make such a finding.[42] When the compulsory counterclaim rule is applied, courts use the "logical relationship" test—met when "the same facts, which may or may not be disputed, are significant and logically relevant to both claims"—to determine whether a counterclaim arises out of the same transaction or occurrence as the opposing party's claim.[43]

¶ 42    Finally, courts have cautioned that not all related cases are inherently interrelated. One court, for example, held that although two suits involved overlapping parties and arose from the same prior employment relationship, they were not inherently

---

[40] *Id.* at 293 (clarifying that a counterclaim is compulsory if "it was not the subject of a pending action when the original suit was commenced").

[41] *Guy v. Damson Oil Corp.*, No. 13-91-028-CV, 1997 WL 33760709, at *6 (Tex. App.—Corpus Christi-Edinburg Mar. 27, 1997, no writ) ("Although the first suit was for constructive trust, and the second was for title to the mineral interests, both arose out of the same transaction, were against substantially the same defendants, and involved substantially the same property interests. Essentially the same interests are being asserted against the same defendants. The only major difference in the legal theories asserted is that the present suit asks directly for title, while the prior suit asked that a constructive trust be imposed sufficient to require title to be conveyed. Both are merely separate means by which the plaintiffs below sought to acquire the benefits of the mineral interests in question.").

[42] *In re Pioneer Energy Servs. Corp.*, 696 S.W.3d 743, 748 (Tex. App.—San Antonio 2024, no pet.) (clarifying that while the Texas Supreme Court has noted that "courts should be guided by" the compulsory counterclaim rule, the Court "has never held that dominant jurisdiction only applies when the compulsory counterclaim rule is satisfied").

[43] *In re Forney*, 554 S.W.3d 145, 148, 151 (Tex. App.—San Antonio 2018, orig. proceeding [mand. denied]); *In re Tex. Christian Univ.*, 571 S.W.3d 384, 389–90 (Tex. App.—Dallas 2019, orig. proceeding ) (mem. op.).

interrelated because one addressed the plaintiff's right to compensation under employment agreements, while the other concerned the plaintiff's creation of a competing business.[44] Another court found no inherent interrelationship between a shareholder's suit challenging the issuance of new shares and a separate suit by the company against the shareholder for breach of fiduciary duty.[45] And, consistent with *Dolenz*, still other courts have emphasized that dominant jurisdiction does not apply when the first court does not have the entire controversy before it, or when granting dominant jurisdiction to the first court would delay or prevent the prompt and full adjudication of the parties' dispute.[46]

### B.    The parties' arguments.

¶ 43    Defendants' Plea in Abatement, only two paragraphs long, primarily reiterates their position that "the factual basis for the claims asserted in Plaintiff's Original Petition in this Court involves the same transaction or occurrence that is the subject matter

[44] *Forney*, 554 S.W.3d at 151.

[45] *In re Martin*, 358 S.W.3d 767, 769, 771 (Tex. App.—Texarkana 2012, orig. proceeding ) ("[W]e cannot conclude that M.R.M.C.'s action arose solely out of the occurrence or transaction which is the subject of Scott's suit. Again, M.R.M.C.'s suit alleged several other instances of conduct on the part of Scott other than filing of the Harris County lawsuit. To the extent that the two lawsuits are related, it has not been demonstrated that M.R.M.C.'s suit came out of the same events comprising Scott's claim for relief in the Harris County lawsuit."); *see also Forney*, 554 S.W.3d at 151 ("In this case, the two suits are not inherently interrelated because they involve distinct disputes and the claims in the two suits are not based on the same essential facts. The Harris County suit involves a dispute between relators and McCombs Energy regarding relators' right to compensation under the Carried Interest Agreement and the Employee Overriding Royalty Pool Agreement, whereas the Bexar County suit involves a dispute between the parties regarding relators' alleged creation of a competing business and usurpation of a business opportunity."); *Taiwan Shrimp Farm Vill. Ass'n, v. U.S.A. Shrimp Farm Dev., Inc.*, 915 S.W.2d 61, 68 (Tex. App.—Corpus Christi-Ediburg 1996, writ denied) ("[T]he two cases do not arise out of the same transaction or occurrence. The federal case, which arose out of alleged land and securities violations, deceptive trade practices, and fraud that occurred in 1990, was filed two years before appellants converted the six pumps to their use . . . A judgment in the federal case, as it stands now, would not resolve the issue of ownership or determine the amount of damages caused by conversion of the pumps. Accordingly, we hold that the two lawsuits are not inherently interrelated and that the trial court did not abuse its discretion in denying the plea in abatement.").

[46] *Perry v. Del Rio*, 66 S.W.3d 239, 252 (Tex. 2001).

in the [Parker County] Lawsuit."[47] At the August 6, 2025 hearing, Defendants expanded on this by arguing that certain claims in the Parker County case—specifically, for imposition of a constructive trust and appointment of a receiver—concerned *all* LLC property, not just Tract One. Defendants further insisted that Martens's abuse of discretion and breach of contract claims in Parker County center on Ezzell's alleged mismanagement of the LLC, which is also at issue in this case. Finally, they asserted that Martens was aware of at least some of the alleged wrongful conduct before the Parker County pleading deadline.[48]

¶ 44    In response, Martens points out again that "[t]he sole issue to be determined in this lawsuit is Ms. Martens' claim for the involuntary winding up and termination of [the LLC]," whereas the Parker County case "relate[s] solely to Plaintiff's claim for a member distribution of her share of the proceeds from the undisclosed sale of [Tract One.]"[49] She also maintains that the factual bases for the two suits are independent, pointing to six alleged thefts in 2025 that form part of her termination claim.[50] As to timing, Martens asserts that her termination claim could not be compulsory because it was neither "mature" nor "owned by" Martens when the Parker County case was filed in 2022. She also clarified at the hearing that all her complaints and requests for relief in the Parker County case focus entirely on the Tract One proceeds.

### C.    The two cases are not inherently interrelated.

---

[47] Defs.' Mot. to Dismiss, Plea to the Jurisdiction, and Plea in Abatement ¶ 10.
[48] Defendants claim Martens has been aware of the alleged tax fraud since May 2023.
[49] Pl.'s Resp. at 1–2.
[50] *Id.* at 4–5.

¶ 45   The Court finds that the two lawsuits are not inherently interrelated, rendering dominant jurisdiction inapplicable. While the parties in both suits are identical, the issues and claims differ. The Parker County case addresses only Ezzell's alleged failure to distribute Martens's share of the Tract One proceeds, giving rise to a claim for damages. This action, on the other hand, concerns Ezzell's overall (mis)management of the LLC itself—including alleged acts of theft, tax fraud, and asset depletion—for which Martens seeks only termination of the LLC and disposition of its four remaining tracts of land (which does not include Tract One).

¶ 46   Using the compulsory counterclaim rule as guidance,[51] at least two requirements are not satisfied: (1) Martens's termination claim was not "mature" when the Parker County suit was filed in 2022, or even by the December 6, 2024 pleading deadline; and (2) the claim does not "arise out of the transaction or occurrence that is the subject matter" of the Parker County claims.[52]

¶ 47   On the first point, it is not at all clear that Martens could have asserted a viable termination claim in 2022. At that time, the only potentially actionable facts were the undisclosed sale of Tract One and an ownership deadlock. Almost all the other allegations supporting the present action—tax evasion, asset depletion, and six alleged thefts totaling $513,000—occurred later, and in some instances much later, throughout 2025. This Court will not second guess when Martens determined that she had sufficient

---

[51] *See* TEX. R. CIV. P. 97(a); *Wyatt*, 760 S.W.2d at 247; *J.B. Hunt*, 492 S.W.3d at 292–93; *Forney*, 554 S.W.3d at 148; *Tex. Christian Univ.*, 571 S.W.3d at 389–90.
[52] *See* TEX. R. CIV. P. 97(a).

grounds to proceed with an involuntary termination claim, or what the final straw should have been for her.

¶ 48    Defendants argued at the hearing that Martens should have at least attempted to amend her Parker County petition, yet they cited no authority requiring her to do so before bringing an independent claim to terminate the LLC. Moreover, counsel admitted that Defendants told Martens they would oppose any effort to amend her Parker County petition after the December 2024 pleading deadline.[53] In that context, filing a new action was well within Martens's rights.

¶ 49    On the second point—whether the present claim arises out of the same transaction or occurrence at issue in the Parker County case—the Court applies the "logical relationship" test: whether the same facts are significant and logically relevant to both claims.[54] Here, the facts underlying each suit are distinct. The Parker County case is limited to Ezzell's alleged failure to distribute Tract One proceeds.[55] This case, by comparison, involves much broader allegations—tax fraud, serial theft, unauthorized management, exclusion from governance, and asset depletion.[56] In fact, as Martens intimated at the hearing, she could successfully prosecute her claim in this case without ever mentioning the sale of Tract One, relying entirely on the other allegations mentioned above—any one of which might support termination of the LLC.

---

[53] Defs.' Mot. to Dismiss, Plea to the Jurisdiction, and Plea in Abatement, Ex. B.
[54] *Forney*, 554 S.W.3d at 151.
[55] Pl.'s 3d Am. Pet. ¶¶ 7, 10–17, *Martens v. Lamkin Land & Cattle Co.*, No. CV23-0123 (415th Dist. Ct., Parker County, Tex. Nov. 25, 2024).
[56] Pl.'s Pet. ¶¶ 10, 20–27.

¶ 50    In short, the Business Court case involves dramatically different allegations that have no logical relationship to whether Defendants owe Martens damages for Tract One. Indeed, another litmus test is whether the outcome of the Parker County case would have preclusive effect on this case, or rather, as in *Dolenz*, "a judgment in the first suit would *not* foreclose all issues between [the parties.]"[57] Here, the Court has little doubt this case will need to move forward regardless of any judgment in Parker County; even a defense verdict there would leave intact Martens's claim to terminate the LLC and to dispose of its remaining assets.

### D.    Practical considerations render abatement inappropriate.

¶ 51    Finally, the Court finds that practical considerations of convenience and efficiency also weigh against abatement.

¶ 52    Abatement is a procedural tool, not an end in itself, and should be employed only when it serves a useful purpose. In a typical dominant-jurisdiction scenario, the second action is stayed to allow the first action to proceed to judgment, with that judgment having preclusive effect. Here, abatement would offer no benefit. Regardless of the outcome in Parker County, this Court must resolve Martens's application to terminate the LLC. An abatement would merely postpone the inevitable. The Supreme Court has recognized that such delays can be exceptions to the first-filed rule, and the Court considers this case to be such an exception, even if the first-filed rule applied (which it does not).[58]

---

[57] *Wyatt*, 760 S.W.2d at 248 (distinguishing *Dolenz*, 620 S.W.2d at 575) (emphasis added).
[58] *See Perry*, 66 S.W.3d at 252.

## V.    CONCLUSION

¶ 53    The Court concludes there are no grounds to grant Defendants' Motion to Dismiss or Plea to the Jurisdiction. The present action was filed after September 1, 2024, and Martens's termination claim is not compulsory in the Parker County case. Additionally, although the Parker County suit and this suit involve the same parties and stem from a longstanding dispute, their subject matters are not inherently interrelated, rendering dominant jurisdiction inapplicable. Abatement is therefore unwarranted.

¶ 54    Consistent with this opinion, the Court **DENIES** Defendants' Motion to Dismiss, Plea to the Jurisdiction, and Plea in Abatement.

IT IS SO ORDERED.

BRIAN STAGNER
Judge of the Texas Business Court,
Eighth Division

SIGNED ON: August 14, 2025